# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| AMERICAN BRASS ROD FAIR TRADE COALITION, MUELLER BRASS CO., and WIELAND CHASE LLC,<br><br>     Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>     Defendant,<br><br>and<br><br>RAJHANS METALS PRIVATE LIMITED,<br><br>     Defendant-Intervenor. | Court No. 24-00119 |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. MCCARTHY
Director

FRANKLIN E. WHITE, JR.

OF COUNSEL:

FEE PAUWELS
Attorney
Office of the Chief Counsel
for Trade Enforcement and Compliance
United States Department of Commerce

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch, Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7568
sosun.bae@usdoj.gov

Dated: April 21, 2025

*Attorneys for Defendant*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

_____

| | |
|---|---|
| AMERICAN BRASS ROD FAIR TRADE COALITION, MUELLER BRASS CO., and WIELAND CHASE LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| RAJHANS METALS PRIVATE LIMITED, | ) ) |
| Defendant-Intervenor. | ) ) |

Court No. 24-00119

_____ )

## <u>ORDER</u>

Upon consideration of plaintiffs' motion for judgment upon the agency record, defendant's and defendant-intervenor's responses thereto, plaintiffs' reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.


Dated:_____                    _____
        New York, New York                                   JUDGE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

STATEMENT PURSUANT TO RULE 56.2 .......................................................................2

I.    Administrative Determination Under Review .................................................2

II.   Issues Presented For Review .........................................................................2

STATEMENT OF FACTS ...................................................................................................2

I.    Initial Proceedings .........................................................................................2

II.   Commerce's Findings Regarding The Change In WIP Inventory ...................3

III.  Commerce's Findings Regarding Rajhans' Scrap Offset ................................3

SUMMARY OF THE ARGUMENT ....................................................................................6

ARGUMENT .......................................................................................................................7

I.    Standard Of Review ........................................................................................7

II.   Commerce's Acceptance Of Rajhans' Change In WIP Inventory Was Lawful And
      Supported By The Record .................................................................................8

      A.    Commerce Correctly Relied On Rajhans' Normal Books And Records In
            Accepting Rajhans' Reported Change In WIP Inventory .......................8

      B.    Commerce Reasonably Determined That Rajhans' Cost Reporting
            Methodology Did Not Obviate The Propriety Of The Change In WIP
            Inventory ..............................................................................................9

      C.    Record Evidence Supports Inclusion Of The Change In WIP Inventory ............12

      D.    Plaintiffs' Argument That Rajhans' Change In WIP Inventory Is Distortive
            Is Unfounded ........................................................................................17

      E.    Commerce Correctly Determined That The Change In WIP Inventory Did
            Not Necessitate Further Adjustments To Rajhans' Scrap Offset .........................19

III.  Commerce's Adjustment To Rajhans' Scrap Offset Methodology Is Lawful And
      Supported By Substantial Evidence ...............................................................20

i

A.      Commerce Adequately Addressed Plaintiffs' Administrative Arguments
        Concerning Rajhans' Calculation Of Scrap Offset.................................................20

B.      Plaintiffs Have Failed To Demonstrate Commerce's Adjustment To Rajhans'
        Scrap Methodology Is Unreasonable ...................................................................21

IV.     Substantial Evidence Supports Commerce's Calculation Of The All-Others Rate ..........25

CONCLUSION.....................................................................................................................25

# TABLE OF AUTHORITIES

Cases

*Allied Tube & Conduit Corp. v. United States,*
25 CIT 23 (Ct. Int'l 2001)................................................................................8

*Altx, Inc. v. United States,*
167 F. Supp. 2d 1353 (Ct. Int'l Trade 2001)....................................................18

*Ceramica Regiomontana, S.A. v. United States,*
10 CIT 399 (1986), *aff'd,* 810 F.2d 1137 (Fed. Cir. 1987)..............................22

*Consol. Edison Co. v. NLRB,*
305 U.S. 197 (1938).........................................................................................7

*Consolo v. Fed. Mar. Comm'n,*
383 U.S. 607 (1966).........................................................................................7

*Fujitsu Gen. Ltd. v. United States,*
88 F.3d 1034 (Fed. Cir. 1996).........................................................................7

*Globe Metallurgical Inc. v. United States,*
36 CIT 1222 (2012)........................................................................................17

*Goldlink Indus. Co. v. United States,*
431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006)...............................................7, 17

*Haixing Jingmei Chem. Prods. Sales Co., Ltd. v. United States,*
335 F. Supp. 3d 1330 (Ct. Int'l Trade 2018)....................................................15

*Husteel Co., Ltd. v. United States,*
98 F. Supp. 3d 1315 (Ct. Int'l Trade 2015)......................................................16

*Matsushita Elec. Indus. Co. v. United States,*
750 F.2d 927 (Fed. Cir. 1984).........................................................................7

*Mid Continent Steel & Wire, Inc. v. United States,*
940 F.3d 662 (Fed. Cir. 2019)........................................................................22

*Nippon Steel Corp. v. United States,*
458 F.3d 1345 (Fed. Cir. 2006).......................................................................7

*Pirelli Tyre Co., Ltd. v. United States,*
128 F.4th 1265 (Fed. Cir. 2025).....................................................................16

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC,*
30 F.4th 1109 (Fed. Cir. 2022).......................................................................18

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ...........................................................................18

*Timken Co. v. United States*,
699 F. Supp. 300 (Ct. Int'l Trade 1988) ................................................................7

*Torrington Co. v. United States*,
20 CIT 632 (1996)...........................................................................................13, 14

*Universal Camera Corp. v. NLRB*,
340 U.S. 474 (1951) ...............................................................................................7

Statutes

19 U.S.C. § 1516a ........................................................................................................7

19 U.S.C. § 1677b......................................................................................................6, 9, 21

19 U.S.C. § 1677f .......................................................................................................18

Other Authorities

*Antifriction Bearings and Parts Thereof from France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom*,
58 Fed. Reg. 39,729 (Dept. of Commerce July 26, 1993).....................................14

*Stainless Steel Sheet and Strip in Coils from Taiwan*,
71 Fed. Reg. 75,504 (Dep't of Commerce Dec. 15, 2006)......................................8

*Polyethylene Terephthalate Film, Sheet, and Strip from Thailand*,
73 Fed. Reg. 55,043 (Dep't of Commerce Sept. 24, 2008).....................................8

*Rubber Bands From Thailand*,
84 Fed. Reg. 8,304 (Dep't of Commerce Mar. 7, 2019) .......................................12

*Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*,
86 Fed. Reg. 41,448 (Dep't of Commerce Aug. 2, 2021) .....................................13

*Brass Rod from Brazil, India, Israel, Mexico, the Republic of Korea, and South Africa: Initiation of Less-Than-Fair-Value Investigations*,
88 Fed. Reg. 33,575 (Dep't of Commerce May 24, 2023)......................................2

*Brass Rod From India*,
88 Fed. Reg. 83,900 (Dep't of Commerce Dec. 1, 2023)........................................3

*See Brass Rod from India*,
89 Fed. Reg. 29,300 (Dep't of Commerce Apr. 22, 2024)..................................2, 5

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

_____
                                                )
AMERICAN BRASS ROD FAIR TRADE           )
COALITION, MUELLER BRASS CO., and        )
WIELAND CHASE LLC,                          )
                                                )
                 Plaintiffs,                    )
                                                )
          v.                                    )          Court No. 24-00119
                                                )
UNITED STATES,                                 )
                                                )
                 Defendant,                     )
                                                )
          and                                   )
                                                )
RAJHANS METALS PRIVATE LIMITED,          )
                                                )
                 Defendant-Intervenor.          )
_____)

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response in opposition to the motion for judgment on the agency record filed by plaintiffs, American Brass Rod Fair Trade Coalition and its members, Mueller Brass Co. and Wieland Chase LLC (collectively, Brass Rod Coalition).  *See* ECF No. 28 (Pls. Br.). Plaintiffs challenge various aspects of the Department of Commerce's (Commerce) final affirmative determination in the less-than-fair-value investigation of brass rod from India. Because Commerce's final determination is supported by substantial evidence and otherwise in accordance with law, the Court should deny plaintiffs' motion and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

I.    Administrative Determination Under Review

Plaintiffs challenge certain aspects of the less-than-fair-value investigation of brass rod from India. *See Brass Rod from India*, 89 Fed. Reg. 29,300 (Dep't of Commerce Apr. 22, 2024) (final determination), and accompanying Issues and Decision Memorandum (IDM) (P.R. 293).[1] The period of investigation covers April 1, 2022 through March 31, 2023.

II.   Issues Presented For Review

1.    Whether Commerce's acceptance of Rajhans Metals Pvt Ltd's (Rajhans) change in work-in-process (WIP) inventory is supported by substantial evidence.

2.    Whether Commerce's adjustment of Rajhans' claimed scrap offset is supported by substantial evidence and in accordance with law.

3.    Whether the rate Commerce calculated for non-investigated respondents (all-others rate) is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

I.    Initial Proceedings

On April 27, 2023, plaintiffs submitted a petition to Commerce, requesting the imposition of antidumping duties on imports of brass rod from India. *See* Petition (P.R. 1, C.R. 1).  On May 17, 2023, Commerce initiated an investigation into the named product.  *See Brass Rod from Brazil, India, Israel, Mexico, the Republic of Korea, and South Africa:  Initiation of Less-Than-Fair-Value Investigations*, 88 Fed. Reg. 33,575 (Dep't of Commerce May 24, 2023) (P.R. 41). Commerce selected Rajhans and Shree Extrusions Limited (Shree) as mandatory respondents for

_____

[1] P.R. __ refers to documents in the public record and C.R. __ refers to documents in the confidential record.

individual examination.  *See* Respondent Selection Memo (P.R. 57, C.R. 26); Selection of Additional Respondent (P.R. 91).

II.    Commerce's Findings Regarding The Change In WIP Inventory

In its preliminary determination, Commerce disallowed Rajhans' adjustment to its reported cost of manufacturing for the change in WIP inventory, explaining that the change in WIP inventory was accounted for twice in the cost reconciliation.  *See Brass Rod From India*, 88 Fed. Reg. 83,900 (Dep't of Commerce Dec. 1, 2023) (preliminary determination) (P.R. 236) and accompanying Preliminary Decision Memorandum (PDM) at 11; *see also* Rajhans Preliminary Cost Calculation Memo at 2-3 (P.R. 221, C.R. 250); IDM at 10.  Specifically, Commerce found that the total reported costs at the start of Rajhans' cost reconciliation accounted for the change in WIP inventory, but that Rajhans had later also incorporated the change in WIP inventory in its cost of manufacturing for the period of investigation.  *See* Rajhans Preliminary Cost Calculation Memo at 2-3.

After the preliminary determination, and prior to verification, Rajhans corrected the double counting in its reporting, which Commerce confirmed during its cost verification.  *See* Rajhans Section D Supplemental Questionnaire Response and Re-Revised Exh. D-14 (P.R. 185, C.R. 165-201); Rajhans Cost Verification Report at 11 (P.R. 265, C.R. 345).  Accordingly, for its final determination, and using the corrected data, Commerce reversed its adjustment to Rajhans' reported change in WIP inventory and otherwise left Rajhans' reported change in WIP inventory unchanged.  IDM at 10.

III.    Commerce's Findings Regarding Rajhans' Scrap Offset

Because Rajhans did not value scrap in its normal books and records, it initially calculated the quantity of its scrap offset for the brass rod production stage based on standard

yield rates that it explained were dependent on the shape and size of the brass and rod products produced, rather than the grade of the products. Rajhans Preliminary Cost Calculation Memo at 2 (P.R. 221, C.R. 250); Rajhans Section D Supplemental Questionnaire Response at 14 (P.R. 185, C.R. 165-201). Because the data submitted by Rajhans did not appear to support its explanation, Commerce recalculated Rajhans' scrap offset for bar and rod product control numbers (CONNUMs). *See* Rajhans Preliminary Cost Calculation Memo at 2 (P.R. 221, C.R. 250). As such, for its preliminary determination, Commerce granted Rajhans its reported scrap offset with certain adjustments resulting from those recalculations. PDM at 11; Rajhans Preliminary Cost Calculation Memo at 2.

After the preliminary determination, but prior to verification, Commerce requested that Rajhans clarify its explanation of yield rates. *See* 2nd Section D Supplemental Questionnaire at 5 (P.R. 219, C.R. 248). Rajhans clarified that its yield losses were impacted by the product specification, which includes grade, shape, size, class (drawn/extruded), and length, and provided documentation supporting its explanation. *See* Rajhans 2nd Section D Supplemental Questionnaire Response at 11-13 and Exh. S3-6 (P.R. 244, C.R. 268-279). At Rajhans' cost verification, Commerce was able to verify Rajhans' reported standard yield loss rates. Rajhans Cost Verification Report at 16-17 (P.R. 265, C.R. 345). Accordingly, Commerce determined, in its final determination, that Rajhans' proposed methodology for calculating its scrap offset *quantity* (used in its scrap offset calculation at the rod production stage) was reasonable. IDM at 7.

Commerce did, however, revise the scrap offset adjustment as related to the rod production stage, correcting Rajhans' impermissible *valuation* of scrap in its scrap offset. IDM at 6-7; Rajhans Final Cost Calculation Memo (P.R. 296; C.R. 357). This revision corrected an

overstated scrap offset resulting from Rajhans' use of chemical code-specific billet input costs to value its scrap.  IDM at 7; Rajhans Final Cost Calculation Memo at 1-2, Att. 1.  Commerce explained that, because generated scrap does not have the same market value as a pristine billet (*i.e.*, a short brass log of specific chemical composition, ready to be extruded into brass rod), calculating the scrap offset using the value of pristine billet improperly overstated the value of the generated scrap.  *Id.*  And while Commerce found Rajhans' methodology for determining scrap ***quantity*** in its scrap offset calculation to be reasonable, it found the methodology for determining the ***value*** of the scrap in its scrap offset calculation to be inconsistent with how Rajhans valued runaround scrap, and thus unreasonable.[2]  IDM at 7; Rajhans Final Cost Calculation Memo at 1-2.  To ameliorate the inconsistent valuations of scrap in Rajhans' reporting and resolve Rajhans' overstated scrap offset, Commerce revised the value of Rajhans' scrap offset at the rod production stage using a ratio of Rajhans' calculated per-unit values of: (1) reintroduced scrap, and (2) scrap included in its scrap offset.  *Id.*

Commerce calculated an estimated weighted-average dumping margin of 2.19 percent for Rajhans and a 5.42 percent for Shree, resulting in a 2.41 percent margin for non-individually-investigated exporters/producers.  *See Brass Rod from India*, 89 Fed. Reg. at 29,301; IDM at 3.

---

[2]  Because the extrusion process involves shaping brass billet into brass rod according to a customer's specifications, the process produces some leftover brass. This is called scrap. Rajhans reuses some of this scrap by reintroducing it into the billet production stage, where the scrap is melted and mixed in with other raw materials, and then casted into brass billets.  This is called runaround (or reintroduced) scrap.  At verification, Rajhans company officials explained to Commerce that the scrap generated during rod production (the scrap offset) was valued based on the chemical code-specific billet consumption value (*i.e.*, the value of pristine billet) because such scrap was generated from said chemical code-specific billet.  *See* Rajhans Cost Verification Report at 10.  However, as Commerce explained in the final determination, because Rajhans valued scrap generated during rod production, but reintroduced into the billet production stage (*i.e.*, reintroduced scrap), as the weighted average cost of brass scrap in its cost build-up, it effectively overvalued the same scrap in its scrap offset calculations when compared to its valuation of runaround scrap.  See IDM at 7.

Because Commerce made an affirmative final determination for countervailable export subsidies in a companion countervailing duty investigation, Commerce adjusted the cash deposit rates for Rajhans and all other exporters/producers, calculating zero percent cash deposit rates for both Rajhans and all other exporters/producers.  *See id.* at 29,301-02.

## SUMMARY OF THE ARGUMENT

Commerce's final determination should be sustained in its entirety.  Plaintiffs contest both Commerce's acceptance of Rajhans' change in WIP inventory and Commerce's calculation of the scrap offset, but fail to establish that Commerce acted unlawfully or unreasonably with regard to either issue.

With regard to the change in WIP inventory, Commerce's acceptance of Rajhans' reporting—as corrected by Rajhans—was reasonable and supported by the record.  Consistent with its obligations under 19 U.S.C. § 1677b(f)(1)(A), Commerce accepted Rajhans' change in WIP inventory, as maintained in its normal books and records, after verifying the accuracy of Rajhans' WIP inventory reporting.  The record also demonstrates that the change in WIP inventory is a relevant element in calculating Rajhans' cost of manufacturing, as it is incorporated into Rajhans' total costs from which per-unit costs are calculated.  Plaintiffs' argument that Rajhans' cost reporting methodology already accounts for the change in WIP inventory, such that no change in WIP inventory is warranted, is undermined by the record and the relevant law.  Moreover, in granting Rajhans a scrap byproduct offset, Commerce reasonably adjusted Rajhans' scrap offset methodology, taking into account plaintiffs' concerns.  Commerce's adjustment of the scrap offset was supported by the record, and plaintiffs cannot demonstrate otherwise.

## ARGUMENT

I.    <u>Standard Of Review</u>

In reviewing Commerce's antidumping duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion' found by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

"Moreover, the Court may not substitute its judgment for that of {Commerce} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (cleaned up); *see also Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988) (explaining that it is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record"). Hence, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

II.    Commerce's Acceptance Of Rajhans' Change In WIP Inventory Was Lawful And
Supported By The Record

The Court should sustain Commerce's acceptance of Rajhans' reported cost of

manufacturing, which includes a change in WIP inventory.  Commerce reasonably, and

consistent with its practice and the relevant statutory framework, included the change in WIP

inventory in Rajhans' reported cost of manufacturing.  Plaintiffs assert that "Commerce's

decision to grant Rajhans a WIP inventory adjustment to its {cost of manufacturing (COM)} was

unlawful, as it was unsupported by the record evidence and at odds with agency practice."  Pls.

Br. at 14.  But this is simply not the case.

A.    Commerce Correctly Relied On Rajhans' Normal Books And Records In
Accepting Rajhans' Reported Change In WIP Inventory

As a threshold matter, plaintiffs' position that the respondent—Rajhans—bears the

burden of establishing it is entitled to a WIP inventory adjustment, Pls. Br. at 14-15 (citing *Allied*

*Tube & Conduit Corp. v. United States*, 25 CIT 23, 29 (Ct. Int'l 2001)), mischaracterizes the

relevant standard.

As Commerce explained in its final determination, the change in WIP inventory is ***not***, as

plaintiffs suggest, an "adjustment" like the duty drawback adjustment discussed in *Allied Tube*,

to which a respondent must show it is entitled.  IDM at 11; *see also Allied Tube*, 25 CIT at 29

("As with all favorable adjustments to normal value or export price, respondent bears the burden

of establishing both prongs of the test, and therefore, its entitlement to a duty drawback

adjustment.").  Rather, the change in WIP inventory is a standard factor in the calculation of the

cost of manufacturing.  *Id.* at 10, n.33 (citing *Stainless Steel Sheet and Strip in Coils from*

*Taiwan*, 71 Fed. Reg. 75,504 (Dep't of Commerce Dec. 15, 2006), and accompanying IDM at

cmt. 3; *Polyethylene Terephthalate Film, Sheet, and Strip from Thailand*, 73 Fed. Reg. 55,043

(Dep't of Commerce Sept. 24, 2008), and accompanying IDM at cmt. 1). As such, the question is not whether Rajhans has established it is entitled to a "WIP inventory adjustment," but whether Commerce's acceptance of the change in WIP inventory reported in Rajhans' normal books and records was reasonable and consistent with the record. The answer is yes.

19 U.S.C. § 1677b(f)(1)(A) requires Commerce to—in calculating costs—rely on the records of the exporter or producer of the merchandise if such records are kept in accordance with the generally accepted accounting principles of the exporting country and reasonably reflect the costs associated with the production and sales of the merchandise. Here, Rajhans tracked the change in WIP inventory in its normal books and records, which it keeps in accordance with Indian generally accepted accounting principles. IDM at 11 (citing Rajhans 2nd Supplemental Section D Questionnaire Response at Re-Revised Exh. D-10(a) (C.R. 276); Rajhans Cost Verification Report). Moreover, Rajhans' books and records reasonably reflect the cost associated with the production and sales of the merchandise, showing that the change in WIP inventory for the reporting period was negative (*i.e.*, demonstrating an increase in WIP at the end of the period of investigation as compared to the beginning of the period). *Id.* Finally, and crucially, Commerce ***actually verified*** the accuracy of Rajhans' reporting. IDM at 11; Rajhans Cost Verification Report. Commerce's acceptance of Rajhans' change in WIP inventory complied with the statute and was supported by the record.

B.    Commerce Reasonably Determined That Rajhans' Cost Reporting Methodology Did Not Obviate The Propriety Of The Change In WIP Inventory

The crux of plaintiffs' argument is that Rajhans calculated its cost of manufacturing in a manner that eliminated the need to factor the change in WIP inventory into the cost calculation. *See* Pls. Br. at 15-19. According to plaintiffs, Rajhans' two-step costing methodology constitutes a "direct linkage" that "excludes the cost of billets not consumed during that period." *Id.* at 15,

17.  Plaintiffs further claim that "a separately reported WIP inventory adjustment is not appropriate" because Rajhans' reporting methodology "does not include costs for unused WIP (*i.e.,* unused billet) remaining in inventory."  *Id.* at 16-18.  But plaintiffs' argument is predicated on a misunderstanding as to where Rajhans included its change in WIP inventory.

Plaintiffs base their argument on statements in Commerce's verification report that purportedly indicate that "Rajhans reported its costs using a two-step costing methodology reflecting its production process."  *Id.* at 15 (citing Rajhans Cost Verification Report at 5, 14).  But plaintiffs seem not to grasp the role WIP plays in Rajhans' reporting.  Plaintiffs rely on the fact that "the weighted average billet per-unit cost became the direct material cost at the 'rod production stage'" in claiming that the change in WIP inventory need not be incorporated, but, as Commerce explained, the change in WIP inventory is necessary to ensure the per-unit billet costs used in the rod cost calculation are accurate.  IDM at 10.  Because Rajhans included the change in WIP inventory in the total billet costs, from which it calculated its per-unit billet costs, the calculated per-unit billet costs (from which rod costs were calculated) were reflective only of the costs associated with billets that were ***consumed*** in rod production by the end of the period of investigation.  *Id.* at 10 ("{T}he per-unit billet cost used in the rod cost calculation represents the chemical code-specific POI weighted average per-unit cost of the total billets produced during the POI, not all of which were consumed in the rod production.  As part of the POI COM, the change in WIP inventory is relevant.").

In contrast, had Rajhans not included the change in WIP inventory, the per-unit billet costs would have been inclusive of both the costs to produce billets used in rod production, ***and*** the costs to produce billets that were not consumed in rod production by the end of the period of investigation—*i.e.*, WIP.  Furthermore, without incorporating the change in WIP inventory, the

per-unit billet costs would not have accounted for the costs Rajhans accrued prior to the period of investigation, which are reflected in Rajhans' beginning WIP inventory.

As Commerce explained, "{b}ecause the WIP is processed into finished goods during the year, the beginning WIP would be added to the COM and the ending WIP would be deducted from the COM," reflected as the ***change*** in WIP inventory.  IDM at 10.  Put simply, where a respondent's beginning WIP inventory exceeds ending WIP inventory, the change in WIP inventory results in an increase in overall costs, reflecting the reality that the respondent used more WIP inventory—the costs for which were not accrued within the period of investigation— than it produced.  On the flip side, where a respondent's beginning WIP inventory is less than its ending WIP inventory, the change in WIP inventory results in a decrease in overall costs, reflecting the reality that the respondent accrued more costs within the period of investigation that resulted in WIP inventory, rather than finished goods.  The change in WIP inventory is thus integral to Rajhans' cost methodology, regardless of whether the change is positive or negative, because it "ensures that all the manufacturing costs incurred in producing finished goods during the POI are included in the total COM."  IDM at 10-11.

For this reason, plaintiffs' assertion that the change in WIP inventory "has *no effect* on the per-unit cost to produce billets" is plainly erroneous.  Pls. Br. at 18 (emphasis in original).  Because the per-unit billet costs used in the rod cost calculation are intended to reflect the costs associated with billets ***actually consumed in rod production***, a change in WIP inventory— whether positive or negative—***should*** have an effect on per-unit billet costs.  IDM at 10.  Simply because the change in WIP inventory affects the per-unit billet costs does not mean that Commerce made an impermissible adjustment to the per-unit cost to produce billets; rather, it is a necessary element of calculation that ensures the per-unit billet costs are not distorted by the

inclusion of costs associated with WIP.  *Id.*  Contrary to plaintiffs' implication, Rajhans' cost reporting methodology is not unique; rather, it is a reasonable, standard methodology for ensuring the per-unit billet costs are reflective of the costs associated with billets consumed in rod production.  *See, e.g.*, *Rubber Bands From Thailand*, 84 Fed. Reg. 8,304 (Dep't of Commerce Mar. 7, 2019), and accompanying IDM at cmt. 5 (Rubber Bands from Thailand IDM) ("We do not find Liang Hah Heng's 'reduction' in costs for ending WIP to be problematic, as it is an integral part of the equation in computing total POI COM.").  Rajhans correctly included the change in WIP inventory in its calculation of per-unit billet costs, and the company's cost calculation methodology does nothing to negate the necessity of including the change in WIP inventory in order to accurately calculate costs.

Finally, plaintiffs assert that "Rajhans reported its consumption costs during the period of investigation in a way that already excludes the cost of billets not consumed during that period." Pls. Br. at 17.  We do not dispute this.  But including the change in WIP inventory in total billet costs is precisely **how** Rajhans accurately reported its costs in a manner that inherently excluded the cost of billets not consumed during the period.  Plaintiffs cannot establish that Rajhans' cost reporting methodology obviates the need to include the change in WIP inventory.

C.    Record Evidence Supports Inclusion Of The Change In WIP Inventory

Plaintiffs argue that, even if Commerce reasonably included the change in WIP inventory in the reported cost of manufacturing as a general matter, doing so here would be inconsistent with Commerce's alleged practice of including the change in WIP inventory only when the WIP is not related to finished goods inventory.  Pls. Br. at 19-22.  But plaintiffs attempt to apply Commerce's practice regarding inventory **valuation** adjustments, *see id.* at 19-20, to a situation

in which no such adjustment was made.  Commerce here accepted Rajhans' change in the **amount** of WIP inventory—a routine element of accurate cost calculations.

Plaintiffs rely on *Carbon Steel Pipes from Mexico* in claiming that Commerce has an "established practice" of accepting a respondent's inclusion of change in WIP inventory only when the change is unrelated to finished goods inventory.  Pls. Br. at 19-20 (citing *Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes From Mexico*, 86 Fed. Reg. 41,448 (Dep't of Commerce Aug. 2, 2021), and accompanying IDM at cmt. 8 (Carbon Steel Pipes from Mexico IDM)).  In that determination, Commerce stated that it would only grant a respondent a period inventory adjustment so long as the adjustment "result{s} from ***revaluations of either raw materials or WIP and are not related to finished goods inventory***."  Carbon Steel Pipes from Mexico IDM at cmt. 8.  But Rajhans did not request an adjustment resulting from ***revaluations*** of WIP inventory; rather, it simply accounted for its ***change in WIP inventory***, which resulted from its usage of existing WIP inventory and creation of new WIP inventory throughout the period of investigation.  Accordingly, *Carbon Steel Pipes from Mexico* is inapplicable.

Plaintiffs also rely on this Court's decision in *Torrington Co. v. United States*, 20 CIT 632, 641 (1996), in arguing that, because Rajhans' WIP inventory is allegedly "saleable merchandise," Commerce should not have accepted Rajhans' change in WIP inventory.  Pls. Br. at 20, 22.  But, as Commerce observed in its final determination, *Torrington* does not "help{} elucidate Commerce's WIP inventory adjustment practice" because the Court in that case considered the meaning of WIP in an entirely different context—what a respondent may include in their inventory carrying costs.  IDM at 11.  *Torrington* relied on an administrative determination in which Commerce stated that, "because raw materials and work in process are, by definition, not yet salable merchandise, the Department bases ***inventory carrying cost*** on the

value of finished goods only." *Torrington*, 20 CIT at 641 (citing *Antifriction Bearings and Parts Thereof from France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom*, 58 Fed. Reg. 39,729, 39,745 (Dept. of Commerce July 26, 1993)) (emphasis added). In contrast, during the underlying proceeding Commerce determined whether Rajhans appropriately included its change in WIP inventory in its ***reported costs***. IDM at 10-11.

In *Torrington*, the Court's statements as to what should constitute WIP was context-specific: Commerce excluded the WIP portion of a respondent's home market inventory carrying cost because inventory carrying costs "are designed to measure the cost to a company of holding merchandise that could be sold to generate revenue," (*i.e.*, finished goods). *Id.* at 641-42. The Court's interest in WIP was limited to ensuring a party does not adjust its inventory carrying cost to include the carrying cost for items that could not "be sold to generate revenue." *Id.* at 641. That situation is markedly different from the one at issue here, where Commerce tried to calculate an accurate total cost of manufacturing for the period of investigation in order to calculate the reported costs, which "ensures that all of the manufacturing costs incurred in producing finished goods during the POI are included in the total COM." IDM at 10-11 (citing *Rubber Bands from Thailand IDM at 20-21*). As such, *Torrington* is not instructive to the Court's decision.

Even assuming *Torrington* informs Commerce's treatment of change in WIP inventory, plaintiffs cannot demonstrate that Commerce's acceptance of Rajhans' change in WIP inventory is unsupported by substantial evidence. Contrary to plaintiffs' allegations, Commerce sufficiently engaged with the record evidence in rendering its determination. First, Commerce relied on Rajhans' submitted data, which was corroborated by the audited financial statements, identifying its WIP inventory as including billets and products in process. IDM at 11. Second,

Commerce verified this data using Rajhans' WIP inventory as recorded in the audited financial statement. *Id.* Third, Commerce relied on extensive record evidence demonstrating billets were by-and-large consumed in Rajhans' production of rod products. *Id.* Commerce thus reasonably found, based on record evidence, that Rajhans' change in WIP inventory is related to WIP, not finished goods inventory. *Id.*; *see also* Rajhans Rebuttal Case Br. at 4-7 (C.R. 350).

Plaintiffs invite the Court to reweigh the record evidence in hopes that the Court will draw a different conclusion, citing a single verification exhibit to claim that Rajhans' WIP inventory included types of products that Rajhans sold, and that therefore those products are saleable merchandise and should be excluded from WIP inventory. Pls. Br. at 20-22 (citing Rajhans Cost Verification Report at CVE-6 (P.R. 265, C.R. 345)). But plaintiffs' arguments amount to no more than "mere disagreement with Commerce's weighing of the evidence . . . mistak{ing} the function of the court, which is to determine whether {Commerce's final determination} {is} supported by substantial evidence." *Haixing Jingmei Chem. Prods. Sales Co., Ltd. v. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018).

For example, plaintiffs point out that Rajhans lists ███ in its WIP inventory, a product which Rajhans reported having sold at the billet stage of production. Pls. Br. at 20-21 (citing Rajhans Section D Supplemental Questionnaire Response at 22). But, as discussed above, Commerce explained that "{t}he record shows that Rajhans' WIP inventory includes billets and products in process and these items were recorded in the audited financial statements as WIP inventory. The record also shows that billets produced during the POI were mostly consumed in the production of rod products." IDM at 11 (citing Rajhans Cost Verification Report at CVE-2, CVE-4, CVE-6 (P.R. 185, C.R. 165)). Commerce considered plaintiffs' interpretation of Rajhans' WIP inventory item list and determined that the record evidence

supported a finding that Rajhans' reported WIP inventory—maintained in its normal books and records in accordance with Indian generally accepted accounting principles—consisted of items that Commerce determined to accept in a respondent's reported change in WIP inventory. *Id.* Commerce's determination is therefore supported by substantial evidence, and the Court should not accept plaintiffs' invitation to consider the record anew.

Plaintiffs further allege Commerce did not address their argument "that other 'products in process' included in Rajhans' WIP inventory include ███████████████████████ ████████████████" Pls. Br. at 22. But Commerce need not "specifically address" arguments that are not significant. *Husteel Co., Ltd. v. United States*, 98 F. Supp. 3d 1315, 1359 (Ct. Int'l Trade 2015); *see also Pirelli Tyre Co., Ltd. v. United States*, 128 F.4th 1265, 1271 (Fed. Cir. 2025) ("The substantial-evidence standard requires Commerce to consider all evidence on the record, but such consideration does not necessitate explicit mention and discussion of each piece of evidence."). In any event, Commerce did address this argument, stating that "the petitioners assert that Rajhans' WIP includes saleable finished goods and that WIP inventory is, by definition, not saleable merchandise . . . We find the petitioners' argument to be unpersuasive." IDM at 11.

Moreover, plaintiffs provide inadequate support for their conclusion that Rajhans' reported WIP inventory constitutes saleable merchandise that should be excluded from a change in WIP inventory. In their administrative case brief, plaintiffs asserted:

> As for the ██████████████ reported {in Exhibit CVE 6 of Commerce's Cost Verification Report}, the schedule also indicates that the ███████ ████████████████████████████ Thus, this category ████████████████. Finally, as for ██████████████, Rajhans reported ████.

Brass Rod Coalition Case Br. at 19-20 (P.R. 274, C.R. 349) (citing Rajhans Cost Verification

Report at 10).  Neither plaintiffs' administrative case brief nor their opening brief before this

Court provide any reasoned explanation for their conclusion that the line items listed in Rajhans'

data constitute "███████████."  Plaintiffs point to no record evidence beyond the labels

Rajhans used for its various categories of WIP in the one exhibit it cites, and provide no

explanation for their conclusion.  Plaintiffs' reliance on this exhibit does not undermine

Commerce's determination.

      Finally, even assuming that plaintiffs' assessment of the record evidence presented a

reasonable alternative to Commerce's findings, which it does not, that the record may support

two competing conclusions does not render Commerce's determination unreasonable or

unsupported by substantial evidence.  *See, e.g., Globe Metallurgical Inc. v. United States*, 36 CIT

1222, 1230 (2012) ("The standard of review contemplates that more than one reasonable

outcome is possible on a given administrative record"); *Goldlink Indus. Co.*, 431 F. Supp. 2d at

1326.  Commerce examined the record and reasonably found that including the Rajhans' change

in WIP inventory would be consistent with Commerce's practice.  IDM at 10-11.  Looking at

Rajhans' submitted WIP inventory data, Commerce discerned that the data included billets and

products in process, and verified that these items were recorded in Rajhans' audited financial

statement as WIP inventory.  *Id.* at 11.  Because Commerce reasonably relied on substantial

record evidence in support of the inclusion of Rajhans' reported change in WIP inventory,

plaintiffs' arguments must fail.

      D.    **Plaintiffs' Argument That Rajhans' Change In WIP Inventory Is Distortive Is Unfounded**

      Plaintiffs contend that "Commerce failed to address in the *Final Determination*

arguments made by Plaintiffs concerning the distortive nature of the WIP inventory adjustment

granted to Rajhans," claiming "that failure alone" requires a remand.  Pls. Br. at 22.  As an initial

matter, plaintiffs made this argument below only in a footnote to their administrative case brief.

Brass Rod Coalition Case Br. at 20 n.77.  As such, plaintiffs have likely failed to preserve this

argument by exhausting it at the administrative level.  *See Roche Diagnostics Corp. v. Meso*

*Scale Diagnostics, LLC*, 30 F.4th 1109, 1116 (Fed. Cir. 2022) ("Arguments raised in footnotes

are not preserved.") (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320

(Fed. Cir. 2006)).

Moreover, Commerce was not required to explicitly address this argument.  19 U.S.C.

§ 1677f(i)(3)(A) directs Commerce to "address{} relevant arguments" in its final determination.

As noted above, this obligation does not require that Commerce "address every argument and

piece of evidence, . . . {but only} significant arguments and evidence which seriously

undermines {Commerce's} reasoning and conclusions."  *Altx, Inc. v. United States*, 167 F. Supp.

2d 1353, 1374 (Ct. Int'l Trade 2001).  Plaintiffs assert that "{c}ommon sense dictates that

products with ████ yield loss should have ██████████," but point to no record

evidence to support this point.  Pls. Br. at 23; *see also* Brass Rod Coalition Case Br. at 20 n.77.

Moreover, plaintiffs—during the administrative proceeding—proposed no alternative that would

cure the alleged distortion.

In any event, Commerce did assess Rajhans' reporting for distortive behavior, finding

none.  IDM at 11 ("We do not find Rajhans' reduction in costs for change in WIP to be

***problematic***, as it is an integral part of the equation in computing total POI cost of goods

manufactured." (emphasis added)).  Commerce was under no obligation to belabor plaintiffs'

conclusory and unsupported statements, given that it had identified no distortions or other

problems with Rajhans' reporting.

18

E.    Commerce Correctly Determined That The Change In WIP Inventory Did Not Necessitate Further Adjustments To Rajhans' Scrap Offset

Plaintiffs' final argument with regard to the change in WIP Inventory is that, by accepting Rajhans' change in WIP inventory, Commerce should have ameliorated an alleged change to the calculation of Rajhans' scrap offset by further adjusting Rajhans' scrap offset. Pls. Br. at 23-25. Plaintiffs claim that Commerce stated, "without any elaboration or explanation," only that WIP inventory is unrelated to the scrap offset calculation. *Id.* at 24 (quoting IDM at 11). But Commerce need not elaborate on what is self-evident. The change in WIP inventory serves to ensure that the total costs from which cost reconciliation begins include "all the manufacturing costs incurred in producing finished goods." IDM at 10-11. Separately, Commerce allows "for a scrap offset {to a respondent's cost of manufacturing} based on the quantity of scrap generated during the cost reporting period." *Id.* at 6. These two issues are clearly unrelated, as they represent different aspects of the cost of manufacturing calculation, and serve different purposes.

As stated above, Commerce is not required to address every argument, but only those that seriously undermine its conclusion. While plaintiffs contend that Commerce is required to "articulate a satisfactory explanation for its action," Pls. Br. at 25, they fail to identify any shortcomings in Commerce's conclusion on this point. They also provide no support for their assertion that, because "the scrap offset needed to be further reduced," Rajhans' change in WIP inventory is unsupported by substantial evidence. Pls. Br. at 24. Consequently, Commerce was not required to address this argument in more detail than it did.

III.    Commerce's Adjustment To Rajhans' Scrap Offset Methodology Is Lawful And
Supported By Substantial Evidence

Commerce reasonably made an adjustment to Rajhans' scrap offset, and plaintiffs cannot

demonstrate otherwise.  Plaintiffs challenge Commerce's scrap offset methodology, claiming

that: (1) they identified a cause of distortion in Rajhans' scrap offset methodology that

Commerce failed to address in its final determination—that Rajhans valued scrap generated at

the rod production stage based on the chemical code-specific value of that billet; and (2)

Commerce's adjustment did not address the distortion caused by Rajhans' varied valuations of

scrap in calculating the scrap offset.  Pls. Br. at 25-32.  Neither of these arguments have merit,

and this Court should sustain.

A.    Commerce Adequately Addressed Plaintiffs' Administrative Arguments
Concerning Rajhans' Calculation Of Scrap Offset

Plaintiffs first claim that Commerce failed to address its administrative argument that

Rajhans improperly valued scrap in its scrap offset using "chemical code-specific valuation."

Pls. Br. at 28-29.  According to plaintiffs, this alone should require remand.  *Id.* at 29.  But this

ignores that, during the underlying proceeding, plaintiffs presented ***two alternative*** solutions or

methodologies for calculating Rajhans' unreasonable scrap offset valuation, not ***two distinct***

***arguments***, each of which Commerce was required to address.  *See* Pls. Case Br. at 15

("***Alternatively***, if Commerce finds that it would be more appropriate to use a single average

Rs/kg scrap offset for all CONNUMs . . . the suggested SAS language to implement this change

is provided below." (emphasis added)).  Because Commerce adopted the first methodology urged

by plaintiffs, it was not required to address the second.  *Compare* IDM at 7 *with* Plaintiffs' Case

Br. at 15; *see also* Rahjans Final Cost Calculation Memo at Att. 1.

In its final determination, Commerce agreed with plaintiffs' argument that Rajhans'

methodology for valuing its scrap offset was "inconsistent" with "Rajhans' scrap valuation

methodology used for the reintroduced scrap at the billet production stage."  IDM at 7.  To

render Rajhans' scrap valuation consistent, Commerce adjusted Rajhans' scrap offset using the

ratio between the average per-unit value of the reintroduced scrap and the average per-unit value

of scrap in Rajhans' scrap offset.  *Id.* at 7; *see also* Rajhans Final Cost Calculation Mem at 1-2

and Att. 1 (P.R. 296; C.R. 357).  This adjustment effectively tied the scrap offset to Rajhans'

valuation of the cost of scrap reintroduced during the billet production stage.  *Id.*

> **B.**     **Plaintiffs Have Failed To Demonstrate Commerce's Adjustment To Rajhans'**
> **Scrap Methodology Is Unreasonable**

Plaintiffs further allege that, because Commerce did not address plaintiffs' varied scrap

valuation argument, Rajhans' scrap offset methodology remains "distorted."  Pls. Br. at 30.

According to plaintiffs, Commerce could have addressed this alleged distortion by applying "a

single average per-unit value to Rajhans' self-generated scrap," for which plaintiffs provided

suggested SAS programming language.  *Id.* (citing Brass Rod Coalition Case Br. at 15).  Even

assuming that Commerce was required to address plaintiffs' secondary argument—which,

because it accepted plaintiffs' first alternative, it was not—this argument is unavailing.  Plaintiffs

cannot demonstrate that Commerce's adjustment was unreasonable or unlawful, and fail to

substantiate their claim that Rajhans' scrap offset is still distortive despite Commerce's

adjustment.

19 U.S.C. § 1677b(b)(2)(A)(ii) directs Commerce to collect the information necessary to

calculate cost of production, such that it can determine "whether there are reasonable grounds to

believe or suspect that sales of the foreign like product have been made at prices that represent

less than the cost of production of the product."  Pursuant to section 1677b(f)(1)(A),

Commerce's standard methodology for calculating costs utilizes respondents' reported data.  *See* PDM at 11.  Because "Commerce has discretion to make reasonable choices within statutory constraints," *Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 667 (Fed. Cir. 2019), the only question is whether "the agency's methodology and procedures are reasonable means of effectuating the statutory purpose."  *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 404-05 (1986), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987).

Here, Commerce found Rajhans' scrap offset methodology unreasonable because it was inconsistent with its scrap valuation methodology used for the introduced scrap at the billet production stage.  IDM at 7.  Commerce explained that, because Rajhans valued reintroduced scrap using the weighted-average cost of brass scrap, its alternative methodology for its scrap offset using chemical code-specific billet cost resulted in inconsistencies between the two cost methodologies.  *Id.*  Accordingly, Commerce adjusted Rajhans' scrap offset to follow Rajhans' valuation of reintroduced scrap.  *Id.*  This adjustment constituted a reasonable methodological choice, supported by substantial record evidence.  Though plaintiffs contend that "applying a single average per-unit scrap value is the most reasonable approach" for correcting Rajhans' scrap offset methodology, Pls. Br. at 30, they have provided no evidence to suggest Commerce's chosen adjustment was unreasonable or in conflict with the statutory framework.

In fact, plaintiffs advocated below for the approach Commerce adopted for the final determination, further demonstrating the reasonableness of its approach.  The methodology plaintiffs now claim is "the most reasonable" was actually presented as a secondary alternative to the adjustment Commerce implemented.  Plaintiffs' first proposal, as stated in the underlying proceeding, asks Commerce to:

> {D}evelop a ratio reflecting (1) the {} value of the runaround scrap in Rajhans'
> billet cost buildup, divided by (2) the average value of Rajhans' claimed scrap

offsets (*i.e.*, the average pristine billet cost {}), which equals ██████. If Commerce multiplies this ratio to each of Rajhans' claimed scrap offsets in its cost database (which are the ████████████████████████████████ ██), it would be adjusting for the excessive offsets claimed on a CONNUM-specific basis.

> ***Alternatively***, if Commerce finds that it would be more appropriate to use a single average Rs/kg scrap offset for all CONNUMs, accounting only for differences in yield (but not differences in chemistry) due to the commingling of runaround scrap, {plaintiffs} suggested SAS language to implement this change.

Brass Rod Coalition Case Br. at 15 (P.R. 274, C.R. 349) (emphasis added). This Court should not condone plaintiffs' about-face.

Finally, plaintiffs' analysis—which purportedly demonstrates that Rajhans' reporting methodology is distorted—only illustrates the reasonableness of Commerce's chosen adjustment. Plaintiffs compare several scrap valuations in Rajhans' scrap offset calculations with valuations of reintroduced scrap to "highlight{} why the adjustment Commerce applied . . . did not correct the distortion caused by this issue." Pls. Br. at 30-31. Far from showing a distortion, the examples demonstrate the effectiveness of Commerce's adjustment.

Plaintiffs provide two examples showing that, in instances where Rajhans valued reintroduced scrap ██████████████████ rupees/kg, it claimed two different chemical code-specific scrap values for the scrap offset: ██████ rupees/kg and ██████ rupees/kg. Pls. Br. at 30-31 (citing Rajhans 2nd Section D Supplemental Questionnaire Response at Re-Revised Exhs. D-9(b) Part-2 and D-10(a) Part-2 (P.R. 244, C.R. 275-276)). While plaintiffs contend that these differences reveal that "Commerce allowed Rajhans to distort its cost reporting," applying Commerce's chosen adjustment demonstrates otherwise. With plaintiffs' first example, in which Rajhans valued the scrap offset for ██████ at ██████ rupees/kg, Commerce's ██████ percent downward adjustment to Rajhans' scrap offset effectively decreased Rajhans' reported scrap

offset for this chemical code to ▮▮▮▮ rupees/kg, whereas Commerce's adjustment decreased Rajhans' scrap offset valuation for chemical code ▮▮▮▮ from ▮▮▮▮ rupees/kg to ▮▮▮▮ rupees/kg. Pls. Br. at 30-31; *see also* IDM at 7; Rajhans Final Cost Calculation Memo at 1-2 and Att. 1. To plaintiffs' point, Commerce's adjustment effectively decreased Rajhans' scrap offset for ▮▮▮▮ to ▮▮▮▮ rupees/kg, but did not decrease it ▮▮▮▮▮▮▮▮▮▮ Rajhans' valuation of the input scrap, *i.e.*, ▮▮▮▮ rupees/kg. *Id.* at 31. However, plaintiffs' second example demonstrates the full effect of Commerce's ***average*** adjustment: the adjustment effectively decreased Rajhans' scrap offset valuation for chemical code ▮▮▮▮ from ▮▮▮▮ rupees/kg to ▮▮▮▮ rupees/kg, with the effect of assigning a ▮▮▮▮ value to Rajhans' scrap offset for ▮▮▮▮ when compared to Rajhans' valuation of ▮▮▮▮ (the input scrap for ▮▮▮▮) as an input, *i.e.*, ▮▮▮▮ rupees/kg. *See* Pls. Br. at 30-31 (citing Rajhans 2nd Section D Supplemental Questionnaire Response at Re-Revised Exhs. D-9(b) Part-2 and D-10(a) Part-2 (P.R. 244, C.R. 275-276)); IDM at 7; Rajhans Final Cost Calculation Memo at 1-2 and Att. 1. By applying an ***average*** adjustment across the board, Commerce ensured overall consistency between Rajhans' scrap valuation in its scrap offset and its scrap valuation for runaround scrap.

A third example further illustrates this point. Rajhans produced the product ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from billet of chemical code ▮▮▮▮ . *See* Rajhans 2nd Section D Supplemental Questionnaire Response at Re-Revised Exhibit D-10(a) Part 2 (row 218) (P.R. 244, C.R. 276). Rajhans valued the scrap offset for this product using the ▮▮▮▮ rupees/kg billet cost per kg rate. *Id.* at Re-Revised Exhibit D-10(a) Part 2 (row 218, column G). In contrast, Rajhans valued the scrap cost for the relevant input scrap, *i.e.*, ▮▮▮▮ , at ▮▮▮▮ rupees/kg. *Id.* at Re-Revised Exhibit D-9(b) Part 2 (row 67, columns I and BE). Applying the ▮▮▮▮ percent adjustment, Commerce effectively decreased Rajhans

reported scrap offset for this chemical code from ███████ rupees/kg to ███████ rupees/kg,

decreasing Rajhans reported scrap offset ██████████ than its scrap cost valuation (████████

rupees/kg).  *See* Rajhans Final Cost Calculation Memo at 1-2 and Att. 1.  Given these examples

illustrate the effectiveness of Commerce's adjustment to Rajhans' scrap valuation for its scrap

offset, the Court should sustain.

IV.    Substantial Evidence Supports Commerce's Calculation Of The All-Others Rate

Plaintiffs argue that, if the Court remands Commerce's final determination, "the Court

must likewise find the All Others rate from the *Final Determination* to be invalid because it is

based, in part, on an impermissible dumping margin calculated for Rajhans in the *Final*

*Determination*."  Pls. Br. at 32-33.  We agree that Commerce would be statutorily obligated to

recalculate the rate assigned to non-individually-investigated companies if, on remand, it

calculated a new rate for Rajhans.  However, Commerce did not err in determining Rajhans'

weighted-average dumping margin.  Accordingly, the margin assigned to non-individually-

investigated companies does not require revision.  *Id.*

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's final

determination in its entirety and enter final judgement in favor of the United States.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.

OF COUNSEL:

FEE PAUWELS
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
United States Department of Commerce


Dated:  April 21, 2025

/s/Sosun Bae
SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7568
sosun.bae@usdoj.gov

*Attorneys for Defendant*

## **<u>CERTIFICATION OF COMPLIANCE</u>**

Pursuant to this Court's March 31, 2025 order, defendant's counsel certifies that this brief complies with the Court's type-volume limitations rules.  According to the word count calculated by the Microsoft Word processing system used to prepare this brief, I certify that this brief contains 7,303 words, excluding those exempted portions of this brief.

<u>/s/ Sosun Bae</u>
Sosun Bae