## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| AMERICAN BRASS ROD FAIR TRADE COALITION, MUELLER BRASS CO., and WIELAND CHASE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant<br><br>v.<br><br>RAJHANS METALS PRIVATE LIMITED,<br><br>Defendant-Intervenor. | Court No. 24-00119<br><br><br><br>**PUBLIC VERSION** |

### DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Lizbeth R. Levinson
Brittney R. Powell
Alexander D. Keyser

FOX ROTHSCHILD LLP
2020 K Street, N.W.
Suite 500
Washington, DC  20006
Tel: (202) 794-1182
Email: llevinson@foxrothschild.com

*Counsel for Defendant-Intervenor Rajhans Metals Private Limited*

May 5, 2025

2

171671965.1

# TABLE OF CONTENTS

| | |
|---|---:|
| TABLE OF CONTENTS | i |
| TABLE OF AUTHORITIES | ii-iii |
| STATEMENTS PURSUANT TO RULE 56.2 | 2 |
| I.   ADMINISTRATIVE DETERMINATION UNDER REVIEW | 2 |
| II.  STATEMENT OF THE ISSUES | 2 |
| III. STATEMENT OF THE FACTS | 2 |
| SUMMARY OF THE ARGUMENT | 3 |
| ARGUMENT | 4 |
| I.   STANDARD OF REVIEW | 4 |
| II.  RAJHANS' WIP ADJUSTMENT DID NOT INCLUDE FINISHED GOODS | 5 |
| III. COMMERCE'S ADJUSTMENT TO RAJHANS SCRAP OFFSET METHODOLOGY IS LAWFUL AND SUPPORTED BY SUBSTANTIAL EVIDENCE | 8 |
| IV. CONCLUSION | 12 |

## **TABLE OF AUTHORITIES**

### **FEDERAL STATUTES**

| | |
|---|---|
| 19 U.S.C. § 1516a(b)(1)(B) | 4 |

### **FEDERAL CASES**

| | |
|---|---|
| *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984 | 5 |
| *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 158 (1962 | 5 |
| *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1951) | 4, 11 |
| *Fujitsu General. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) | 4 |
| *Metallverken Nederland B.V. v. United States,* 728 F. Supp. 730, 734 (Ct. Int'l Trade 1989) | 5 |
| *Nippon Steel Corp. v. United States,* 458 F.3d 1345, 1352 (Fed. Cir. 2006) | 4 |
| *Nucor Corp. v. United States,* 728 F. Supp. 730, 734 (CIT 1989) | 5 |
| *PAM, S.p.A. v. United States,* 582 F.3d 1336, 1339 (Fed. Cir. 2009) | 4, 11 |
| *Zhejiang DunAn Hetian Metal Co. v. United* States, 652 F.3d 1333, 1341 (Fed. Cir. 2011) | 5, 11 |

### **ADMINISTRATIVE DECISIONS**

| | |
|---|---|
| *Brass Rods from India:* 89 Fed. Reg. 29,300 (April 22, 2024) | 2 |

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| AMERICAN BRASS ROD FAIR TRADE COALITION, MUELLER BRASS CO., and WIELAND CHASE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant<br><br>v.<br><br>RAJHANS METALS PRIVATE LIMITED,<br><br>Defendant-Intervenor. | Court No. 24-00119 |

**DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the Court of International Trade, Defendant-Intervenor, Rajhans Metals Private Limited, hereby submits this response in opposition to the Plaintiffs' Brief in Support of Their Rule 56.2 Motion for Judgment on the Agency Record. *See* ECF No. 28 (Pls. Br.). Rajhans Metals Private Limited ("Rajhans") participated fully as one of the mandatory respondents in the underlying administrative proceeding which gives rise to this appeal.

Plaintiffs' challenge certain aspects of the Department of Commerce's ("Commerce's") final affirmative determination in the less-than-fair-value investigation of brass rod from India, including Commerce's decision to grant Rajhans a work in process ("WIP") inventory

adjustment and its adjustment of Rajhans' scrap recovery methodology. *See id*. For the reasons stated in the Defendant's Response in Opposition to Plaintiffs' Brief in Support of Their Rule 56.2 Motion for Judgment on the Agency Record filed on April 21, 2025 ("Defendant's Response Brief") (which Rajhans adopts by reference and incorporates in its entirety) and for the supplemental reasons stated herein, Commerce's final determination is supported by substantial evidence and in accordance with law.

<b><u>STATEMENTS PURSUANT TO RULE 56.2</u></b>

**I.     ADMINISTRATIVE DETERMINATION UNDER REVIEW**

The administrative determination under review is the final affirmative determination in the antidumping investigation of brass rods from India covering the period of investigation from April 1, 2022 through March 31, 2023. *See Brass Rods from India: Final Affirmative Determination of Sales at Less than Fair Value*, 89 Fed. Reg. 29,300 (April 22, 2024) ("Final Determination") and accompanying Issues and Decision Memorandum ("IDM") (P.R. 293).

**II.    STATEMENT OF THE ISSUES**

1. Whether Commerce's WIP inventory adjustment is supported by substantial evidence.
2. Whether Commerce's adjustment of Rajhans' claimed scrap offset is supported by substantial evidence and in accordance with law.
3. Whether the rate Commerce calculated for non-investigated respondents ("the all others rate") is supported by substantial evidence and in accordance with law.

**III.   STATEMENT OF THE FACTS**

The statement of facts set forth in Defendant's Response Brief are complete and accurate and do not require repetition and supplementation. Rajhans therefore adopts by reference the statement of facts set forth in the Defendant's Response Brief.

## SUMMARY OF THE ARGUMENT

Rajhans joins Defendant in urging the Court to sustain Commerce's Final Determination in its entirety. Plaintiffs dispute Commerce's WIP adjustment and adjustment to Rajhans' reported scrap offset. Plaintiffs fail to show, however, that Commerce's final determination was unreasonable or otherwise not in accordance with law with regard to either issue.

Plaintiffs claim that Commerce's WIP adjustment included certain finished products that were not truly works in process. Pls. Br. at 20-21. Yet, an analysis of the record shows that Rajhans included only "in Process" merchandise and billets as part of its WIP inventory. *Response from Fox Rothschild LLP to Sec of Commerce Pertaining to Rajhans Sec D Supp QR – Part 2* ("*First Supplemental Section D Response*") at Exhibit S1D-6(a) (October 11, 2023) (C.R. 166). Specifically, the billet merchandise was properly included in Rajhans' reported WIP inventory because billets are an intermediate product used as an input in the extrusion phase to produce brass rods. *First Supplemental Section D Response* at 22 (C.R. 165). Even though Rajhans may sell a limited number of billets in the ordinary course of business, this does not change the fundamental nature of the billet from an intermediate product to a finished good. *Id*. Therefore, the record clearly shows that Commerce did not cover any finished goods in its WIP adjustment.

Further, in its Final Determination, Commerce adjusted Rajhans' scrap offset by applying a ratio to the data initially reported by the company. Final Determination IDM at 7 (P.R. 293). Plaintiffs disagree with the methodology chosen by Commerce to adjust Rajhans' scrap offset, arguing that Commerce should have applied the "more reasonable methodology" of using a single average per-unit scrap value. Pls. Br. at 30. Plaintiffs' argument has two fundamental flaws. First, Plaintiffs' preferred methodology would treat all scrap at each stage of production

the same despite their different recipes, chemical codes, and inputs. It is unclear how this methodology is the more reasonable adjustment method when the ratio applied by Commerce accounts for potential variation in Rajhans' scrap based on differences in the inputs, recipes, and chemical codes used in the various stages of production. Second, Plaintiffs' argument asks the Court to ignore the pertinent standard of review to evaluate which option before Commerce was the most reasonable, not whether Commerce's approach was supported by substantial evidence.

Lastly, Rajhans agrees with the legal and factual arguments set forth in Defendant's Response Brief regarding all issues before the Court and incorporate by reference all other arguments made by Defendant.

## ARGUMENT

### I. STANDARD OF REVIEW

When reviewing an antidumping duty determination, the Court must sustain Commerce's results unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B); *see also Fujitsu General Ltd. v. United States*, 88 F. 3d 1034, 1038 (Fed. Cir. 1996). Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.P.A. v. United States*, 582 F. 3d 1336, 1339 (Fed. Cir. 2009), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1951).

A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F. 3d 1345, 1352 (Fed. Cir. 2006) (citation and internal quotation marks omitted). In order for a determination to satisfy this standard ("{t}here must be a rational connection between the facts

found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 158 (1962); *Nucor Corp. v. United States*, 728 F. Supp. 730, 734 (Ct. Int'l Trade 1989).

The Court is not to reweigh the evidence or substitute its judgment for that of Commerce. *See Metallverken Nederland B.V. v. United States*, 728 F. Supp. 730, 734 (Ct. Int'l Trade 1989). It is not the Court's duty to "evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information." *Zhejiang DunAn Hetian Metal Co. v. United* States, 652 F.3d 1333, 1341 (Fed. Cir. 2011). Judicial review of agency action must be based on the record as a whole, and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

## II. RAJHANS' WIP ADJUSTMENT DID NOT INCLUDE FINISHED GOODS

In its Final Determination, Commerce concluded that "{t}he record shows that Rajhans' WIP inventory includes billets and products in process and these items were recorded in the audited financial statements as WIP inventory. The record also shows that billets produced during the POI were mostly consumed in the production of rod products." IDM at 11 (citing Rajhans Cost Verification Report at CVE-2, CVE-4, CVE-6 (P.R. 185, C.R. 165)). Plaintiffs argue that Commerce's acceptance of Rajhans' WIP adjustment was not supported by substantial evidence, claiming that the Rajhans' reported in "saleable" merchandise as "in process." Pls. Br. at 20-21. Specifically, Plaintiffs claim that Rajhans included certain "saleable merchandise," such as [                                                                                                      ]. *See id.*, citing *Rajhans Cost Verification Report* (February 12, 2024) at 10 (P.R. 265, C.R. 345).

Plaintiffs' argument relies on a chart provided by Rajhans in Exhibit CVE-6 of its Cost Verification Exhibits. *Rajhans' Cost Verification Exhibits* (Dec. 26, 2023) at Exhibit CVE-06 at 4 (C.R. 320-325). That chart provided in Exhibit CVE-06 of Rajhans' Cost Verification exhibits included [        ] in the work in process section: [

]. Plaintiffs incorrectly contend that the categories listed in Exhibit CVE-06 were all reported by Rajhans as semi-finished merchandise. Plaintiffs' argument ignores the various documents submitted by Rajhans throughout the investigation showing that only billets and products in process were included in its WIP inventory for the purposes of WIP adjustment.

In response to Commerce's Supplemental Section D Questionnaire, Rajhans provided a valuation of the closing stock of semi-finished or WIP merchandise in Exhibit S1D-6 (a) as follows:

| Semi-Finished Goods | Quantity (kg) | Rate | Value (Rupees) |
|---|---|---|---|
| Billets | [        ] | [        ] | [        ] |
| In Process | [        ] | [        ] | [        ] |
| Total | | | [        ] |

*Response from Fox Rothschild LLP to Sec of Commerce Pertaining to Rajhans Sec D Supp QR – Part 2 First Supplemental Section D Response* at Exhibit S1D-6(a) (October 11, 2023) (C.R. 166). The quantities included in the above chart directly tie to the quantities Rajhans reported in Exhibit CVE-6 of its Cost Verification Exhibits. *Compare id. with Rajhans' Cost Verification Exhibits* at Exhibit CVE-06 at 4 (C.R. 320-325).

PUBLIC VERSION
171665370.1

Exhibit S1D-6(a) clearly shows that Rajhans only took into account "Billets" and "in Process" material in the semi-finished goods it reported to Commerce. Plaintiffs do not dispute Commerce's WIP adjustment as applied to the "in Process" material because the nomenclature used to describe that category clearly demonstrates that the materials included are properly covered by the WIP adjustment. *First Supplemental Section D Response* at Exhibit S1D-6(a) (C.R. 166). Instead, Plaintiffs' arguments are based on the other categories included in Exhibit CVE-6, including [                                                                  ]. Pls. Br. at 20-21. Those categories, however, were not reported by Rajhans as in process merchandise, nor were they taken into account in Commerce's WIP adjustment. *First Supplemental Section D Response* at Exhibit S1D-6(a) (C.R. 166); Final Determination IDM at 11 (P.R. 293). Commerce relied on Exhibit S1D-6(a) of Rajhans Supplemental Section D Response to properly conclude that only "Billets" and "in Process" were included in Rajhans' WIP inventory. Final Determination IDM at 11 (P.R. 293).

The only remaining category from Cost Verification Exhibit CVE-6 that Plaintiffs claim includes "saleable merchandise" is the billet category. *Rajhans' Cost Verification Exhibits* at Exhibit CVE-06 at 4 (C.R. 320-325). Plaintiffs argue that some of the billets produced by Rajhans were sold as billet, and therefore that merchandise should have been treated as finished goods and not as works in process. Pls. Br. at 21. Yet, as Rajhans explained in its Supplemental Section D Response, that billets in stock are treated as "semi-finished goods" because Rajhans uses them in the "extrusion stage for the production of brass bars and rods." *First Supplemental Section D Response* at 22 (C.R. 165). Rajhans properly treated any billets not sold in the ordinary course of business at the billet stage as a work in process product because billets are an intermediate product used in the production of brass rods. *Id*. In both its Cost Verification

Exhibits and its Supplemental Section D Response, Rajhans reported that the [            ] of billets that were left in its closing stock were works in process because billets are typically used in the production of the finished goods, brass rods. *Compare id.* at S1D-6(a) *with First Supplemental Section D Response* at 22 (C.R. 165).

Further, the table provided in Exhibit CVE-6 relied upon by Plaintiffs clearly shows that a limited number of the billets produced by Rajhans during the POI were actually sold in the ordinary course of business. *Rajhans' Cost Verification Exhibits* at Exhibit CVE-06 at 4 (C.R. 320-325). In that table, Rajhans included the column "sold/sent for JW," and reported that it only sold [            ] kilograms of billets, a mere [      ] percent of total billet production during the POI. *Id.* No billets sold in the ordinary course of business were included by Rajhans as part of its works in process inventory. *Id.* The sale of this merchandise also does not detract from the fundamental character of a billet as an intermediate product used in the production of the finished goods, brass rods.

Therefore, Commerce's final determination concerning Rajhans' WIP adjustment was supported by substantial evidence and otherwise in accordance with law. The record clearly shows that the billets and "in process merchandise" which Rajhans reported as semi-finished goods during the investigation were properly treated as WIP, since the merchandise were not finished goods. There is no basis for Plaintiffs' contentions before the Court that Commerce improperly included finished goods within its WIP adjustment in its Final Determination.

### III. COMMERCE'S ADJUSTMENT TO RAJHANS' SCRAP OFFSET METHODOLOGY IS LAWFUL AND SUPPORTED BY SUBSTANTIAL EVIDENCE

In its Final Determination, Commerce applied a ratio of the POI weighted average per unit value of reintroduced scrap at the billet production stage and the POI weighted average per-

unit value of the scrap offset at the rod production stage to Rajhans' scrap offset. Final Determination IDM at 7 (P.R. 293). Plaintiffs contend that Commerce's adjustment to Rajhans' scrap offset fails to "correct the distortion" supposedly caused by Rajhans' reporting methodology. Pls. Br. at 30-32. Instead of the ratio used by Commerce, Plaintiffs claim that applying a "single average per-unit scrap value" was the most reasonable approach because the impact of any differences in chemistry on scrap value are not preserved when [ "

]." *Id*. There are two fundamental flaws in Plaintiffs' argument. First, Plaintiffs' preferred methodology is based on their assumption that the entire input recipe used in billet production only consists of roundabout scrap generated in the production process which is reintroduced in the production of billet. Second, Plaintiffs' argument asks the Court to substitute Commerce's judgment with its own and evaluate whether the information Commerce used was the best available, rather than reasonable.

Plaintiffs' preferred scrap offset methodology does not properly take into consideration the different recipes and inputs used by Rajhans in the production of its various brass rod products. Plaintiffs' proposed methodology would treat each scrap as the same at each stage of production despite the different chemical codes, recipes, and inputs used in the various stages of production. The variation in the recipes and chemical codes of each billet produced causes a variation in the cost of each type of billet produced and in the value of the scrap generated in production of each type of billet.

In making its argument, Plaintiffs used the rod products [

] as examples. Pls. Br. at 30-31, citing *Rajhans Second Supplemental Section D Response* at Exhibit D-9(b) Part 2 (rows 107 and 126,

columns R and BO) (December 13, 2023) (CR 274-278).  For both products, Plaintiffs claim that there is an imbalance in how Rajhans valued the scrap.  Pls. Br. at 30-31.  For [                              ] specifically, Plaintiffs allege that Rajhans distorted the scrap offset by reporting the value of the same scrap at [      ] rupees/kg when reporting it as a byproduct offset and as [      ] rupees/kg when valuing that scrap as an input.  *Id.*

Yet, Plaintiffs' argument ignores the other inputs and materials used in the production of [                                      ].  Exhibit D-9(b) clearly shows when it produced [                              ], Rajhans did not use only scrap types [            ] as Plaintiffs' argument would suggest.  *Rajhans Second Supplemental Section D Response* at Exhibit D-9(b) Part 2 (row 107, columns R and BO) (December 13, 2023) (CR 274-278).  Instead, the production of [                              ] involved the use of scrap and [          ] as raw material inputs.  *Id*.  The same is true for the chemical code [                              ], which uses scrap type [            ] as raw material inputs.  *See id*. at Exhibit D-9(b), row 126.  The use of additional inputs resulted in variations between the recipes and the scrap generated in the brass rod production process.

Commerce's methodology in its Final Determination of applying a ratio to the chemical code, rather than the single average per-unit value recommended by Plaintiffs, takes into consideration the variations between chemical codes and recipes for Rajhans' various products.  Plaintiffs' preferred methodology would only distort the scrap offset, as it would treat products with different chemical codes and different recipes as if their inputs and byproducts are the same.

The second flaw with Plaintiffs' argument is that it completely ignores the standard of review before this Court.  Plaintiffs must prove that Commerce's methodology was unsupported by substantial evidence such that a reasonable mind could not find that evidence supported

Commerce's conclusion. *PAM, S.P.A. v. United States*, 582 F. 3d 1336, 1339 (Fed. Cir. 2009), *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1951). In the underlying Final Determination, Commerce could have chosen any one of several methodologies to adjust Rajhans' scrap offset, but Commerce chose to apply a ratio to adjust the scrap offset. Final Determination IDM at 7 (P.R. 293). Plaintiffs' argument before the Court is that its preferred methodology was the most reasonable methodology available. Pls. Br. at 30. As described above, and in the Defendant's Response Brief, there are several arguments as to why Plaintiffs' methodology is not the most reasonable. Even if the Court assumed, however, that Plaintiffs' methodology is the most reasonable, it still would not warrant a remand or reversal of Commerce's Final Determination.

Plaintiff is essentially urging the Court to substitute its judgment for Commerce's, and to evaluate whether the information Commerce used was the best available. Pls. Br. at 30-32. Yet, it is not the Court's duty to "evaluate whether the information Commerce used was the best available," under the standard of review. *Zhejiang DunAn Hetian Metal Co. v. United* States, 652 F.3d 1333, 1341 (Fed. Cir. 2011). Plaintiffs' argument fails to show how Commerce's choice to use one of the methods it recommended in its administrative case briefs was unsupported by substantial evidence, when Commerce's chosen methodology effectively tied the scrap offset to Rajhans' valuation of the cost of scrap reintroduced during the billet production stage. Final Determination IDM at 7 (P.R. 293); *See also* Brass Rod Coalition Case Br. at 15 (P.R. 274, C.R. 349) (emphasis added). Plaintiffs' argument pretends that Commerce's chosen methodology is unsupported by substantial evidence simply because they prefer an alternative Commerce chose not to use. Plaintiffs' preferences alone are not a sufficient basis for finding that Commerce's Final Determination was unsupported by substantial evidence.

IV.    **CONCLUSION**

With respect to the issues other than those discussed in subsections II and III, *supra*, Rajhans agrees with the legal and factual arguments set forth in Defendant's Response Brief. For the foregoing reasons, and the reasons presented in Defendant's Response Brief, Rajhans urges this Court to uphold Commerce's final affirmative determination in the antidumping duty investigation in *Brass Rods from India.*

|  |  |
|---|---|
|  | /s/ *Lizbeth R. Levinson* <br> Lizbeth R. Levinson <br> Brittney R. Powell <br> Alexander D. Keyser |
|  | FOX ROTHSCHILD LLP <br> 2020 K Street, <br> NW Suite 500 <br> Washington, DC  20006 <br> Tel: (202) 794-1183 |
| Dated: May 5, 2025 | Email: llevinson@foxrothschild.com |

PUBLIC VERSION

## Word Count Certificate of Compliance

This brief has been prepared utilizing Microsoft Word 2016 using a proportionally spaced typeface (12-point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 3,233 words. This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

*/s/ Lizbeth R. Levinson*

Lizbeth R. Levinson
Brittney R. Powell
Alexander D. Keyser

FOX ROTHSCHILD LLP
2020 K Street, NW
Suite 500
Washington, DC  20006
 Tel:   202-794-1183
 Fax:   202-461-3102

May 5, 2025