**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| AMERICAN BRASS ROD FAIR TRADE COALITION, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>RAJHANS METALS PRIVATE LIMITED,<br><br>    Defendant-Intervenor. |  Before: Joseph A. Laroski, Jr., Judge<br>Court No. 24-00119<br><br>**PUBLIC VERSION**<br><br>Rajhans' Business Proprietary Information Deleted from Brackets on Pages 3-6, 8, and Attachment A. |

**REPLY BRIEF OF PLAINTIFFS IN SUPPORT OF THEIR
<u>RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD</u>**

Paul K. Keith, Esq.
Daniel J. Calhoun, Esq.
Jack A. Levy, Esq.
Noah A. Meyer, Esq.
Neal M. Halper*, Director of Accounting*
Susan Moyer, *Director Data Analysis*
Carl P. Moyer, *Director Economic Analysis*
Hiroko K. Hagen, *Director Statistical Analysis*
Stan T. Bowen, CPA

**ROCK CREEK TRADE LLP**
900 19th Street, NW
Suite 600
Washington, DC 20006
(202) 230-6630
*Counsel for Plaintiffs American Brass Rod Fair
Trade Coalition and its members Mueller Brass Co.
and Wieland Chase LLC*

Dated:  June 13, 2025

**PUBLIC VERSION**

**TABLE OF CONTENTS**

Page

I.   COMMERCE'S DECISION TO GRANT A WIP INVENTORY ADJUSTMENT
     TO RAJHANS WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND
     NOT IN ACCORDANCE WITH LAW ................................................................. 2

     A.   Rajhans' Cost Reporting Methodology ................................................. 2

     B.   The Government Fails To Address Plaintiffs' Arguments Or Engage With
          The Facts ................................................................................................. 7

          1.   Commerce's Reliance On Rajhans' "Normal Books And Records"
               Does Not Mean That It Was Appropriate To Adjust for WIP Twice ......... 7

          2.   Rajhans' Methodology Obviated the Need to Separately Account
               for Change in WIP Inventory Through a "WIP Re-allocation" .................. 7

          3.   Rajhans' WIP Inventory Adjustment Was Unwarranted To the
               Extent It Related to Finished Goods and Saleable Merchandise ............... 8

          4.   Commerce Failed to Consider Plaintiffs' Arguments that Rajhans'
               Application of the WIP Adjustment Distorted its Cost Reporting ............. 9

II.  COMMERCE FAILED TO ADDRESS OR CONSIDER PLAINTIFFS'
     ARGUMENTS CONCERNING "RUNAROUND SCRAP" ........................................... 11

III. CONCLUSION ................................................................................................. 14

i

**PUBLIC VERSION**

**TABLE OF AUTHORITIES**

Page(s)

**Court Decisions**

*Jindal Poly Films Limited of India v. United States*,
    365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019)...…..…………....…………………………...8

*Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530 (Fed. Cir. 2019)..……..…..8, 14

*Nucor Corp. v. United States*, 461 F. Supp. 3d 1374 (Ct. Int'l Trade 2020)…..………...…...9, 11

*Timken Co. v. United States*, 894 F.2d 385 (Fed. Cir. 1990)……………...…………...…9-11, 13

*Taizhou United Imp. & Exp. Co. Ltd. v. United States*,
    560 F. Supp. 3d 1316 (Ct. Int'l Trade 2022)………………………....……………9-11, 13

*Corus Staal BV v. Untied States*, 502 F.3d 1370 (Fed. Cir. 2007).……………………….....10

*Ad Hoc Shrimp Trade Enforcement Committee v. United States*,
    578 F. Supp. 3d 1310 (Ct. Int'l Trade 2022).…………………………..………...10-11, 13

*Hyundai Heavy Industries, Co. Ltd. v. United States*,
    332 F. Supp. 3d 1331 (Ct. Int'l Trade 2018)…………………………………………...11, 14

**Administrative Determinations**

*Brass Rod From India: Final Affirmative Determination of Sales at Less Than Fair Value*,
89 Fed. Reg. 29,300 (April 22, 2024)…………………………………………....…...1, 12, 14

**UNITED STATES COURT OF INTERNATIONAL TRADE**

AMERICAN BRASS ROD FAIR TRADE
COALITION, *et al.*,

      Plaintiffs,

v.

UNITED STATES,

      Defendant,

and

RAJHANS METALS PRIVATE LIMITED,

      Defendant-Intervenor.

Before:  Joseph A. Laroski, Jr., Judge
Court No. 24-00119

**PUBLIC VERSION**

Rajhans' Business Proprietary Information
Deleted from Brackets on Pages 3-6, 8,
and Attachment A.

**REPLY BRIEF OF PLAINTIFFS IN SUPPORT OF THEIR
RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD**

The American Brass Rod Fair Trade Coalition and its members Mueller Brass Co. and

Wieland Chase LLC (collectively, "Plaintiffs" or "Petitioners") respectfully submit this reply to

the response briefs filed by Defendant the United States ("the Government"), ECF Doc. 33 (Apr.

21, 2025) ("Govt. Br."), and Defendant-Intervenor Rajhans Metals Private Limited ("Rajhans" or

"Defendant-Intervenor"), ECF Doc. 35 (May 5, 2025) ("Rajhans Br."), concerning the opening

brief filed by Plaintiffs, ECF Doc. 28 (Jan. 10, 2025) ("Plaintiffs Br.") and Commerce's final

determination in *Brass Rod From India: Final Affirmative Determination of Sales at Less Than

Fair Value*, 89 Fed. Reg. 29,300 (Dep't Commerce Apr. 22, 2024) ("*Final Determination*") (P.R.

303), and accompanying Issues and Decision Memorandum ("IDM") (P.R. 293).

**PUBLIC VERSION**

I.     **COMMERCE'S DECISION TO GRANT A WIP INVENTORY ADJUSTMENT TO RAJHANS WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW**

The Government maintains that Commerce's acceptance of Rajhans' adjustment for a change in work-in-process ("WIP") inventory was supported by the record and otherwise lawful. The Government's arguments are unavailing because they are based, like Commerce's determination below, on a fundamental misunderstanding of the methodology Rajhans used to report its costs and account for the change in WIP inventory. As explained below, the record demonstrates that Rajhans' cost reporting clearly accounted for the change in WIP.[1] Rajhans then applied a separate and distinct WIP adjustment — thus accounting for the change in WIP inventory *twice*, and resulting in an unjustified and incorrect understatement of its costs. The Government's misunderstanding of the underlying facts at issue underscores why Commerce's determination cannot be sustained. If Commerce has misinterpreted the record, then a decision based on that misinterpretation is unsupported by substantial evidence and unlawful.

A. **Rajhans' Cost Reporting Methodology**

Because the Government fails to engage with the underlying facts concerning the WIP adjustment or demonstrate an understanding of Plaintiffs' fundamental argument, a more detailed examination of the record and Rajhans' cost reporting methodology appears to be necessary. Therefore, before addressing each of the Government's arguments, we provide a thorough

---

[1] When a company has an opening stock of semi-finished goods at the start of a period of investigation ("POI"), it means that the company incurred costs to produce that feedstock before the POI, but the feedstock will likely be processed into finished goods during the POI. And when a company has a closing stock of semi-finished goods at the end of a POI, it means that the company incurred costs to produce that feedstock during the POI, but the feedstock will likely be processed into finished goods after the POI. Accounting for a change in WIP inventory serves to align POI costs with POI production of finished goods.

explanation of Rajhans' reporting methodology, which will show that the Government's arguments misconstrue the facts. Crucially, this explanation will demonstrate without a doubt that Rajhans' methodology resulted in *double-counting* its adjustment for the change in WIP inventory.

In reporting the actual quantity of billets consumed in bar and rod production, Rajhans accounted for the change in quantity of WIP inventory from the beginning of the period to the end. *See* Cost Verification Exhibits, CVE-6 at 18 (C.R. 322). Rajhans then used the actual quantity of billets consumed to determine the actual POI billet cost-per-kilogram of bar and rod produced. *See* Rajhans Letter, "Second Supplemental Section D Response" (Dec. 13, 2023) (P.R. 244, C.R. 268-79) ("Second D SQR") at Re-Revised Exhibit D-10(a) ("Exhibit D-10(a)") (C.R. 276). Separately, Rajhans included another adjustment amount labeled "WIP Re-allocation," *see id.*, which Rajhans calculated based on the change in the extended value of WIP inventory (*i.e.*, the quantity of billets multiplied by per-unit value) from the beginning of the period to the end, as reported in Rajhans' audited financial statements. *See* Rajhans Letter, "First Supplemental D Response" (Oct. 11, 2023) ("First D SQR") (P.R. 185, C.R. 165-201) at Exhibit S1D-13(a) (C.R. 168). Both of these adjustments relate to the *same* change in inventory quantity of semi-finished goods from the beginning of the period to the end of the POI.

Rajhans' calculation of the total actual quantity of billets consumed (*i.e.*, [

]) is shown in the cost verification exhibits, and demonstrates that Rajhans took the change in WIP inventory into account when calculating this total quantity. *See* Cost Verification Exhibits, CVE-6 at 18 (C.R. 322). Specifically, in Cost Verification Exhibit 6, Rajhans reports billets consumed for bar and rod production of [

] figure, which Rajhans used as the

3

actual quantity of billet consumed for bar and rod production.  *See id.*  This exhibit also shows

how Rajhans used the figure of [                    ] to calculate an adjustment factor of [      ] based

on the difference between the total standard consumption quantity of billets of [                    ]

and the total actual quantity of [                    ].[2]  *See id.*

The Second D SQR at Exhibit D-10(a) Part-2 (C.R. 276) shows how the [      ]

adjustment factor fits within Rajhans' overall cost reporting methodology.[3]  Column "c" of this

exhibit,[4] labeled "Billet Charged Weight," reflects the CONNUM-specific standard weight of

billet used to produce the reported CONNUM-specific production quantity (*i.e.*, the weight of

billet required for production based on Rajhans' standard yield ratios).  *See* Second D SQR at

Exhibit D-10(a) Part-2 (C.R. 276).  Column "d", labeled "Billet Charged Weight-Re allocated,"

reflects the CONNUM-specific standard weight of billet consumed adjusted to actual weight

using the [      ] adjustment factor.  *See id.*  This CONNUM-specific actual weight of billet

consumed was then multiplied by column "g" (labeled "Billet cost per KG")[5] to determine the

---

[2] Rajhans applied this adjustment factor of [      ] to the CONNUM-specific standard billet input weights in its COP calculation worksheet at Exhibit D-10(a) Part-2 of the December 13, 2023 supplemental questionnaire response, in the column d, labeled "Billet Charged Weight Re-allocated."  *See* Second D SQR at Exhibit D-10(a) Part-2 (C.R. 276).

[3] Exhibit D-10(a) Part-1 provides Rajhans' cost reporting methodology on a CONNUM-specific basis, whereas Exhibit D-10(a) Part-2 provides the same methodology but with individual products broken out from their CONNUMs.  Because Rajhans' column labeling differs between Part-1 and Part-2, and because Part-2 is more detailed while still providing all of the same information, all columns referenced in this discussion refer to column labels in Exhibit D-10(a) Part-2.

[4] The column lettering references in this discussion refer to Rajhans' labeling of the columns as provided in excel row 5, not to the default column letters provided by excel.  *See* Second D SQR at Exhibit D-10(a) Part-2 (C.R. 276).

[5] Note that Exhibit D-10(a) Part-2 includes two different columns referencing "Billet cost per KG."  The "Billet cost per KG" in column "g" refers to the production cost of the billets themselves, which are the inputs into the various bar and rod products.  This column "g" "Billet

**PUBLIC VERSION**

total billet cost (column "h") to produce the reported CONNUM-specific production quantity. *See id.* After adjusting for scrap offset (column "i") ***and the WIP Re-allocation adjustment*** (column "j"), Rajhans arrived at a total extended billet cost by CONNUM (column "k"). *See id.* Dividing this total billet cost by the CONNUM-specific production quantity (from column "a") resulted in the reported per unit CONNUM-specific billet cost.[6] *See id.* What this shows is that the change in WIP inventory was already included in determining the actual weight of billets consumed, and the actual weight of billets consumed was used to determine the total billet cost incurred in producing the reported CONNUM-specific production quantity of bar and rod, thus making the inclusion of a separate "WIP Re-allocation" adjustment redundant.

To further demonstrate that Rajhans' methodology accounted for change in WIP *twice*, we can consider the impact if Rajhans had not already accounted for change in WIP in the "Billet Charged Weight" adjustment factor. If the change in WIP inventory had not been included in the [     ] adjustment factor calculation, the adjustment factor would have been [       ] instead of the [     ] used.[7] Under this hypothetical scenario, you could say that the change in WIP

---

cost per KG" comes from Second D SQR at Re-Revised Exhibit D-9(b) (C.R. 268 (pdf version) & 275 (excel version)) and Revised Exhibit S1D-11 (C.R. 168 (pdf version) & 183 (excel version)), where Rajhans calculated the chemical code-specific billet cost of manufacture related to all billets produced.

[6] Unlike the "Billet cost per KG" from column "g" discussed in footnote 5, the "Billet Cos {sic} per KG" in column "j" represents the input material (*i.e.*, billet) cost per kilogram of production of each finished bar and rod product. In other words, although they are named similarly, "Billet cost per KG" in column "g" represents the cost of production for billets, and "Billet Cos per KG" in column "j" represents the material cost per kilogram of bar and rod products. Note also that "WIP Re-allocation" and "Billet Cos per KG" are both labeled column "j". This appears to be a typo, as the next logical label for "Billet Cos per KG" would have been column "l". *See* Second D SQR at Exhibit D-10(a) Part-2 (C.R. 276).

[7] The [       ] figure is calculated from information on page 18 of Cost Verification Exhibit 6 as follows: (Billet consumed for Bar & Rod Production of [          ] – Standard Consumption Quantity of Billet for Bar & Rod of [          ]) / Standard Consumption

inventory was not yet accounted for, thus making the subsequent "WIP Re-allocation" adjustment seem reasonable.  But Rajhans used the [      ] adjustment factor, which incorporated the WIP inventory adjustment into the standard-to-actual consumption ratio calculation, and then Rajhans applied a WIP adjustment a second time in the column labeled "WIP Re-allocation." *See* Second D SQR at Exhibit D-10(a) Part-2 (C.R. 276).

The "WIP Re-allocation" adjustment column total of [                    ], *see id.*, was calculated from note 19 of Rajhans' audited financial statements as shown in First D SQR at Exhibit S1D-13(a) (C.R. 168), and also at page 80 of Cost Verification Exhibit 4 (C.R. 321). Rajhans calculated it as the difference between the value of opening semi-finished goods and the value of the closing semi-finished goods ([                                             ]).  *See* First D SQR at Exhibit S1D-13(a) (C.R. 168).  The opening and closing semi-finished goods values provided in the footnote to the audited financial statements reflect an extended value that was determined based on both the quantity and average per unit cost of the semi-finished goods.[8] *See id.*

For further illustration, and given the complexity of Rajhans' cost reporting methodology, we provide a step-by-step walk-through of the cost build-up for a sample product at **Attachment A**.  As this granular examination demonstrates, Rajhans' cost reporting methodology — which used the [      ] adjustment factor instead of a [      ] adjustment factor — obviated the need to separately account for change in WIP inventory (*i.e.*, through the

---

Quantity of Billet for Bar & Rod of [                ] = [      ].  *See* Cost Verification Exhibits, CVE-6 at 18 (C.R. 322).

[8] The terms "semi-finished goods" and "WIP" are used interchangeably.

"WIP Re-allocation"). Commerce's failure to recognize this fact renders the *Final Determination* unsupported by substantial evidence and unlawful.

**B. The Government Fails To Address Plaintiffs' Arguments Or Engage With The Facts**

**1. *Commerce's Reliance On Rajhans' "Normal Books And Records" Does Not Mean That It Was Appropriate To Adjust for WIP Twice***

The Government argues that Commerce's acceptance of the change in WIP adjustment was reasonable because "Rajhans tracked the change in WIP inventory in its normal books and records," and "Rajhans' books and records reasonably reflect the cost associated with the production and sales of the merchandise." Govt. Br. at 9. But the issue here is with the cost reporting *methodology* used by Rajhans in the investigation, and this methodology was not maintained in Rajhans' normal books and records. Moreover, Plaintiffs' complaint with Rajhans' chosen methodology is that it accounts for the change in WIP inventory *twice*.

**2. *Rajhans' Methodology Obviated the Need to Separately Account for Change in WIP Inventory Through a "WIP Re-allocation"***

The Government asserts that "the change in WIP inventory is necessary to ensure the per-unit billet costs used in the rod cost calculation are accurate." Govt. Br. at 10. But as Plaintiffs stated in our initial brief, the WIP adjustment was already embedded in the first step of Rajhans' cost reporting methodology — *i.e.*, "Rajhans already accounted for the change in its in-process inventory in determining the total quantity of billets consumed . . . ." Plaintiffs Br. at 19. It appears that the Government disputes the demonstrable fact that the change in WIP inventory *is already accounted for* in Rajhans' calculation of total actual billet consumption.

The Government maintains that "Plaintiffs cannot establish that Rajhans' cost reporting methodology obviates the need to include the change in WIP inventory." Govt. Br. at 12. But the Government misunderstands Plaintiffs' position. To be clear, Plaintiffs do not take issue

**PUBLIC VERSION**

with Rajhans' application of a WIP inventory adjustment *once*.  But after already capturing the WIP adjustment a first time when reporting the billet consumption quantity (by using a [     ] adjustment factor instead of a [        ] adjustment factor), ***Rajhans' methodology applied the WIP adjustment a second time*** in a separate field ("WIP Re-allocation") in the spreadsheet calculating bar and rod per unit costs.  *See* Second D SQR at Exhibit D-10(a) Part-2 (C.R. 276).  Like Commerce in its *Final Determination*, it appears that the Government still fails to recognize how these two discrete adjustments account for the same change in WIP inventory twice.

### 3.  *Rajhans' WIP Inventory Adjustment Was Unwarranted To the Extent It Related to Finished Goods and Saleable Merchandise*

Plaintiffs argued in our opening brief that Rajhans' adjustment for WIP was also inappropriate insofar as it related to finished goods and saleable merchandise such as billets, which are themselves in-scope merchandise, and which Rajhans also sold during the POI.  *See* Plaintiffs Br. at 19-22.  In its reply, the Government provides two basic responses, both of which are unavailing.

*First*, the Government asserts that Commerce adequately analyzed and addressed this argument by summarily dismissing it as "unpersuasive."  Govt. Br. at 16 (citing IDM at 11).  According to the Government, "Commerce need not 'specifically address' arguments that are not significant." *Id.* (citations omitted).  But on this point, we submit that Commerce cannot merely provide a conclusory statement in its *Final Determination* without offering a substantive rationale.  *See, e.g., Jindal Poly Films Limited of India v. United States*, 365 F. Supp. 3d 1379, 1386 (Ct. Int'l Trade 2019) ("Based on Commerce's conclusory statements, the court cannot discern the path of Commerce's decision-making nor determine that it is supported by substantial evidence."); *Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 537 (Fed. Cir. 2019) ("*Mid Continent*") ("{T}he required explanation must reasonably tie the determination

8

**PUBLIC VERSION**

under review to the governing statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding.").  On this basis alone, a remand is warranted.  *See Nucor Corp. v. United States*, 461 F. Supp. 3d 1374, 1379 (Ct. Int'l Trade 2020) ("*Nucor*") ("Commerce's findings are conclusory statements … and are not based on any cited evidence in the record. The court remands this issue to Commerce to either identify substantial record evidence in support of its finding or to reconsider its determination.").

*Second*, the Government proceeds to provide a *post hoc* analysis of why it believes Plaintiffs' argument is misplaced.  *See* Govt. Br. at 12-16.  For example, according to the Government, it matters not that a billet may be in-scope merchandise that was sold by Rajhans because Rajhans' internal books and records treated such billets as semi-finished work in process.  *See id.* at 14-15.  But such *post hoc* rationalizations are no substitute for a reasoned analysis from Commerce in the *Final Determination*.  *See Timken Co. v. United States*, 894 F.2d 385, 389 (Fed. Cir. 1990) ("*Timken*") ("{A}gency action cannot be sustained on *post hoc* rationalizations supplied during judicial review.") (citations omitted); *Taizhou United Imp. & Exp. Co. Ltd. v. United States*, 560 F. Supp. 3d 1316, 1324 (Ct. Int'l Trade 2022) ("*Taizhou United*") ("The courts may not acceptcounsel's *post hoc* rationalizations for agency action . . . it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (quoting *SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947)).  Commerce should, therefore, be instructed to analyze this issue on remand.

### 4.  *Commerce Failed to Consider Plaintiffs' Arguments that Rajhans' Application of the WIP Adjustment Distorted its Cost Reporting*

Plaintiffs' administrative case brief before Commerce also included a corollary argument concerning Rajhans' application of the "WIP Re-allocation," explaining that "another problem

**PUBLIC VERSION**

will remain insofar as Rajhans has applied the offset on a product-specific basis in a manner that distorts reported costs." Petitioners Letter, "Petitioners' Case Brief" (Mar. 12, 2024) (P.R. 274, C.R. 349) ("Petitioners' Case Br.") at 20 n.77. Plaintiffs argued in our opening brief that Commerce failed to address this argument in the *Final Determination*. *See* Plaintiffs Br. at 22-23. The Government argues that Plaintiffs "likely failed to preserve this argument by exhausting it at the administrative level" because Plaintiffs included the argument in a footnote. *See* Govt. Br. at 17-18. The Government's equivocation on this point is understandable, given its reliance on precedent concerning judicial doctrine for arguments waived in briefing *before the courts* rather than the exhaustion of administrative remedies *before an agency*. *See id.* (citing *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1116 (Fed. Cir. 2022)). In any event, the law is clear that, even if the Court finds an argument has been improperly raised, the Court retains discretion as to whether to require exhaustion in a particular case. *See Corus Staal BV v. Untied States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007).

Here, Plaintiffs' inclusion of this argument in a footnote was understandable, as it was a corollary argument that would only be relevant if Commerce failed to remove the duplicative adjustment for "WIP Re-allocation". *See* Petitioners' Case Br. at 20 n.77. Moreover, despite its inclusion in a footnote, Plaintiffs' argument was not merely made in passing or without sufficient detail to be considered. To the contrary, Plaintiffs' argument cited to the record and included a detailed description of how Rajhans' cost-calculation methodology leads to "nonsensical results." *Id.*

Additionally, because Commerce failed to address Plaintiffs' argument in the first instance, the Government's claim that Plaintiffs failed to substantiate the argument because it was based on "common sense" is impermissible *post hoc* rationalization. *See* Govt. Br. at 18;

10

*see, e.g.*, *Timken*, 894 F.2d at 389; *Taizhou United*, 560 F. Supp. 3d at 1324; *Ad Hoc Shrimp*

*Trade Enforcement Committee v. United States*, 578 F. Supp. 3d 1310, 1320 (Ct. Int'l Trade

2022) ("*Ad Hoc Shrimp*") ("A court will uphold an agency action when the explanation is of

less-than-ideal clarity; however, the explanation must come from the agency, not

counsel's *post hoc* rationalization of agency action.") (citing *Ultratec, Inc. v. CaptionCall, LLC*,

872 F.3d 1267, 1274 (Fed. Cir. 2017)).[9]

## II.    COMMERCE FAILED TO ADDRESS OR CONSIDER PLAINTIFFS' ARGUMENTS CONCERNING "RUNAROUND SCRAP"

Plaintiffs raised two ***distinct*** issues in our administrative case brief concerning Rajhans'

flawed valuation of brass scrap which was later re-introduced into billet production (so-called

"runaround scrap"). *See* Petitioners' Case Br. at 11-14. The first issue concerned the mismatch

between Rajhans' valuation of scrap when it was produced versus when it was consumed. *See*

*id.* at 11-13. The second issue concerned the differentiated, chemical-code-specific valuation

---

[9] Plaintiffs made another argument before Commerce regarding further adjustments that would be necessary if Commerce failed to deny the WIP adjustment, this time concerning the WIP adjustment's impact on the net value of "runaround scrap." *See* Petitioners' Case Br. at 21-22. Although Commerce at least acknowledged this argument, Commerce failed to address it with more than a conclusory statement that "{t}he WIP inventory represents the value of semi-finished material that is not consumed in the production of finished goods, and it is unrelated to the scrap offset calculation." Final IDM at 11. Despite the Government's claim that "Commerce need not elaborate on what is self-evident," Govt. Br. at 19, conclusory statements are not necessarily self-evident and are certainly not substantial evidence. *See Mid Continent*, 941 F.3d at 537; *Nucor*, 461 F. Supp. 3d at 1379; *Hyundai Heavy Industries, Co. Ltd. v. United States*, 332 F. Supp. 3d 1331, 1349 (Ct. Int'l Trade 2018) (finding Commerce's determination unsupported by substantial evidence because Commerce's discussion consisted of "conclusory statements" and the Court could not "reasonably discern" how Commerce reached its conclusions). In summarily concluding that these issues are unrelated, Commerce failed to address the specific calculations identified in Plaintiffs' administrative case brief that demonstrate how they are connected. *See* IDM at 11; Petitioners' Case Br. at 22. So here again, Commerce should be instructed to analyze this issue on remand and provide a reasoned explanation for any decisions it makes.

Rajhans assigned to scrap, which Plaintiffs argued was inconsistent with the record evidence concerning Rajhans' scrap recovery and reuse. *See id.* at 13-14. Plaintiffs' administrative case brief clearly indicated that Plaintiffs were raising *two distinct flaws* with Rajhans' scrap valuation, *see id.* at 10 ("Specifically, Rajhans' methodology is flawed in **two crucial respects**, as discussed below." (emphasis added)), and Plaintiffs separately explained each flaw in detail to Commerce. Plaintiffs then provided two alternative changes that Commerce could implement to address these flaws: one proposed change that would address the first flaw and a second change that would address both flaws. *See id.* at 15-16.

As explained in Plaintiffs' opening brief, the *Final Determination* addressed Plaintiffs' first argument and implemented the proposed "fix" to address the first issue, but Commerce failed to address, or even mention, Plaintiffs' second argument, which had its own proposed solution. *See* Plaintiffs Br. at 28-29; IDM at 7. Crucially, the *Final Determination* contains no indication whatsoever of whether Commerce agreed or disagreed that the second issue was a flaw at all and no mention of Plaintiffs' proposed solution for the second flaw. *See* IDM at 6-7.

The Government argues that Commerce was not required to address Plaintiffs' second argument because Commerce adopted one of Plaintiffs' two alternative solutions. Govt. Br. at 20-21. Specifically, the Government asserts that, "during the underlying proceeding, plaintiffs presented *two alternative* solutions or methodologies for calculating Rajhans' unreasonable scrap offset valuation, not *two distinct arguments*, each of which Commerce was required to address." Govt. Br. at 20 (original emphasis). However, the Government's argument is based on the subsection of Plaintiffs' administrative case brief where Plaintiffs proposed the two alternative solutions (to two distinct problems) and completely ignores the sections where Plaintiffs articulated in detail these two distinct problems. *See id.* at 20-21; Petitioners' Case Br. at 13-14.

12

Moreover, Plaintiffs' administrative case brief included an extensive description of the record evidence concerning Rajhans' scrap recovery procedures, portions of which were only relevant to, and therefore only included to support, Plaintiffs' second argument. *See* Petitioners' Case Br. at 5-7. Even Plaintiffs' factual examination of Rajhans' scrap process made clear that Plaintiffs were identifying two distinct issues with Rajhans' scrap valuation methodology. *See id.* at 5-6 ("Petitioners do not dispute that Rajhans is entitled to a scrap offset, but Rajhans' methodology for valuing the scrap offset — ***and its methodology for applying it on a CONNUM-specific basis*** — are seriously flawed. To understand ***these issues***, it is helpful to review the role of brass scrap in Rajhans' production process . . . .") (emphasis added).

The Government is half right. Plaintiffs' administrative case brief indeed presented two alternative solutions, but each solution was provided to address a different set of arguments raised by Plaintiffs. *See* Petitioners' Case Br. at 14-15. The Government's argument appears to rely almost entirely on Plaintiffs' use of the word "alternatively" when presenting the proposed solutions to address Plaintiffs' two arguments. *See* Govt. Br. at 20-21. But the "alternatives" were provided to address two scenarios — one where Commerce agreed with Petitioners on only the first issue, and another where Commerce agreed with Petitioners on both issues.

It is impossible to know whether Commerce agreed with Plaintiffs on the second issue because Commerce failed to address the latter argument. As a result, the rest of the Government's argument concerning the substance of the issue amounts to impermissible *post hoc* rationalization. *See, e.g.*, *Ad Hoc Shrimp*, 578 F. Supp. 3d at 1320; *Timken*, 894 F.2d at 389; *Taizhou United*, 560 F. Supp. 3d at 1324. Moreover, the Government's response fails to appreciate the problem identified by Plaintiffs, which underscores the importance of having Commerce, and not merely litigation counsel for the Government, examine such issues.

**PUBLIC VERSION**

The Defendant-Intervenor similarly argues that the *Final Determination* was supported by substantial evidence based on *post hoc* rationalization, and the Court should reject such argument for the same reasons. *See* Rajhans Br. at 8-11. Defendant-Intervenor's argument that the standard of review supports Commerce's determination also fails because Commerce never provided a rationale for its decision. Plaintiffs could only be "urging the Court to substitute its judgment for Commerce's" if Commerce's judgment were reasonably discernible from the record. It is not. *See* IDM at 6-7; *see, e.g.*, *Mid Continent*, 941 F.3d at 537; *Hyundai*, 332 F. Supp. 3d at 1349.

Accordingly, this Court should remand the *Final Determination* to permit Commerce to reconsider its decision in light of Plaintiffs' unaddressed argument and provide a reasoned explanation for whatever conclusion it reaches.

## III.    CONCLUSION

For the foregoing reasons, we respectfully request that this Court remand the *Final Determination* to Commerce.

Respectfully submitted,


/ s / Paul K. Keith

Paul K. Keith, Esq.
Daniel J. Calhoun, Esq.
Jack A. Levy, Esq.
Noah A. Meyer, Esq.
Neal M. Halper, *Director of Accounting*
Susan Moyer, *Director Data Analysis*
Carl P. Moyer, *Director Economic Analysis*
Hiroko K. Hagen, *Director Statistical Analysis*
Stan T. Bowen, CPA

**ROCK CREEK TRADE LLP**
*Counsel for Plaintiffs*

# Attachment A

**BUSINESS PROPRIETARY INFORMATION NOT SUSCEPTIBLE TO SUMMARIZATION DELETED**

**(5 PAGES)**

**PUBLIC VERSION**

## Certificate of Compliance with Chambers Procedures 2(B)(1)

The undersigned hereby certifies that the foregoing brief, inclusive of Attachment A, contains 5,100 words, exclusive of the caption block, table of contents, table of authorities, signature block, and certificates of counsel, and therefore complies with the maximum 7,000 word count limitation set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

By:    /s/ Paul K. Keith

Paul K. Keith

**CERTIFICATION OF SERVICE**

PUBLIC SERVICE

*American Brass Rod Fair Trade Coalition, et al. v. United States*
Court No. 24–00119

This is to certify that on June 13, 2025, I have caused a copy of the foregoing public version of **REPLY BRIEF OF PLAINTIFFS IN SUPPORT OF THEIR RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD** to be electronically served upon the following parties via the Court's CM/ECF electronic filing system:

Sosun Bae, Esq.
*Representative of Defendant United States*
**U.S. Department of Justice**
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC  20044
Email: sosun.bae@usdoj.gov

Lizbeth R. Levinson, Esq.
*Representative of Defendant-Intervenor*
*Rajhans Metal Private Limited*
**Fox Rothschild LLP**
2020 K Street NW, Suite 500
Washington, DC 20006
Email: llevinson@foxrothschild.com

/s/ Paul K. Keith

Paul K. Keith, Esq.
**ROCK CREEK TRADE LLP**
900 19th Street, NW, Suite 600
Washington, DC 20006
(707) 761-0404