Slip Op. 26-70

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN BRASS ROD FAIR TRADE COALITION and ITS INDIVIDUAL MEMBERS,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>RAJHANS METALS PRIVATE LIMITED,<br><br>    Defendant-Intervenor. | Before: Joseph A. Laroski, Jr., Judge<br><br>Court No. 24-00119 |

## OPINION AND ORDER

[Granting Plaintiffs' motion for judgment on the agency record and remanding the U.S. Department of Commerce's final determination concerning the sales at less than fair value investigation of brass rod from India for further consideration and explanation of certain adjustments relating to Defendant-Intervenor's cost of manufacturing the subject merchandise.]

Dated: July 1, 2026

Paul K. Keith and Jack A. Levy, Rock Creek Trade LLP, of Washington, D.C., argued for plaintiffs American Brass Rod Fair Trade Coalition and its Individual Members. Also on the brief were Daniel J. Calhoun and Noah A. Meyer.

Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, U.S. Department of Justice, of Washington, D.C., argued for defendant United States Government. Also on the brief were Yaakov M. Roth, Acting Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr. Of counsel was Fee Pauwels,

Court No. 24-00119                                                        Page 2

Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Laroski, Judge:  The action before the court is a motion for judgment on the agency record pursuant to U.S. Court of International Trade Rule 56.2 filed by Plaintiffs American Brass Rod Fair Trade Coalition and its Individual Members (collectively "ABR").  Pl. Mot. for J. on the Agency R., ECF Nos. 28–29 (Jan. 10, 2025) ("ABR Br.").  ABR challenges the U.S. Department of Commerce's ("Commerce") final affirmative determination concerning the sales at less than fair value investigation of brass rod from India, conducted pursuant to section 735 of the Tariff Act of 1930, as amended ("the Act"), codified at 19 U.S.C. § 1673d.  See Brass Rod from India: Final Affirmative Determination of Sales at Less Than Fair Value, 89 Fed. Reg. 29,300 (Dep't Commerce Apr. 22, 2024), and accompanying Issues and Decision Memorandum ("Final Determination" or "IDM").

Commerce's final affirmative determination found that certain adjustments to the costs provided by mandatory respondent (now Defendant-Intervenor) Rajhans Metals Private Limited ("Rajhans"), including adjustments to account for work-in-progress ("WIP") inventory, and the method for valuing scrap for certain offsets ("scrap offsets") to the cost of manufacturing ("COM"), were appropriate.  IDM at 3.

ABR challenges Commerce's Final Determination with respect to these two methodological findings based on alleged errors in Commerce's cost calculations and a broader refusal by Commerce to address certain arguments ABR raised during

Court No. 24-00119                                                      Page 3

administrative briefing.  Defendant United States (the "Government") and Rajhans

disagree and defend Commerce's approach to these two cost-related issues as

reasonable, supported by substantial evidence, and otherwise lawful.

For the foregoing reasons, the court agrees with ABR and, accordingly, grants

Plaintiffs' motion for judgment on the agency record and remands proceedings to

Commerce for reconsideration of the analysis and conclusions set forth in the Final

Determination.

## BACKGROUND

In 2023, ABR filed petitions seeking imposition of antidumping duties on

imports of brass rod from India and five other countries, prompting Commerce to

initiate investigations.  Brass Rod from Brazil, India, Israel, Mexico, the Republic of

Korea, and South Africa: Initiation of Less-Than-Fair-Value Investigations, P.R. 41,

88 Fed. Reg. 33,575 (Dep't Commerce May 24, 2023) ("Initiation Notice").

Commerce selected Rajhans as a mandatory respondent for its investigation into

brass rod from India.  Less-Than-Fair-Value Investigation of Brass Rod from India:

Respondent Selection, P.R. 57 (Dep't Commerce June 16, 2023) ("Respondent

Selection").  Over the ensuing months, Commerce directed questionnaires to

Rajhans and Rajhans responded accordingly.  See Commerce Letter to Rajhans on

Initial Request for Information, P.R. 63 (June 21, 2023) ("Initial Questionnaire");

Rajhans Letter to Commerce in Response to Initial Questionnaire Section A, P.R.

108–109 (July 26, 2023) ("Rajhans IQR Section A"); Rajhans Letter to Commerce in

Court No. 24-00119                                                    Page 4

Response to Initial Questionnaire Sections B, C, and D, P.R. 141−142 (Aug. 24, 2023) ("Rajhans IQR Sections B–D").  Commerce issued supplemental questionnaires to clarify the information contained in Rajhans' initial questionnaire responses, Commerce Letter to Rajhans on Supplemental Questionnaire Section D, P.R. 154 (Sept. 14, 2023) ("Supplemental Section D Questionnaire"); Commerce Letter to Rajhans on Supplemental Questionnaire Sections A–C, P.R. 166 (Sept. 19, 2023) ("Supplemental Sections A–C Questionnaire"), and Rajhans submitted timely responses.  Rajhans Letter to Commerce on Response to Supplemental Section D, P.R. 185 (Oct. 11, 2023) ("Rajhans SQR Section D"); Rajhans Letter to Commerce on Response to First Supplemental Sections A–C, P.R. 196−197 (Oct. 20, 2023) ("Rajhans First SQR Sections A–C").

On December 1, 2023, Commerce published its preliminary affirmative determination, finding that brass rod from India is being, or is likely to be, sold in the United States at less than fair value.  Preliminary Affirmative Determination Sales at Less Than Fair Value in the Investigation of Brass Rod from India, 88 Fed. Reg. 83,900 (Dep't Commerce Dec. 1, 2023), and accompanying Preliminary Decision Memorandum at 1 ("Preliminary Determination" or "PDM"); see Preliminary Cost Calculation Memorandum, P.R. 221 (Nov. 24, 2023) ("Preliminary Cost Memorandum" or "PCM").

Regarding WIP inventory, Commerce preliminarily found that "[b]ecause the starting amount of the cost reconciliation already includes the change in WIP

inventory and the change in WIP inventory is a part of COM," Rajhans had double counted the change in WIP inventory. PCM at 2–3. Accordingly, Commerce corrected the double counting and disallowed Rajhans' claimed WIP adjustment. Id. at 3.

Regarding Rajhans' applied scrap offset to the cost calculation of bar and rod products, Commerce preliminarily found that Rajhans' decision to use a standard yield rate was unsupported by the data Rajhans provided Commerce. Id. at 2. Instead, Commerce preliminarily concluded that calculating the scrap offset amount using product-specific control numbers ("CONNUMs"), the total production quantity, and a per-unit measure was more appropriate. Id. Accordingly, Commerce revised Rajhans' calculations. Id.

After releasing its Preliminary Determination, Commerce sent Rajhans a second supplemental questionnaire concerning its Section D reporting and an agenda for the upcoming cost verification. See Commerce Letter to Rajhans on Second Supplemental Questionnaire Section D, P.R. 219 (Nov. 27, 2023) ("Second Supplemental Section D Questionnaire"); Commerce Letter to Rajhans on Cost Verification Agenda, P.R. 232 (Nov. 30, 2023) ("CVA"). Rajhans responded with additional revisions to key cost exhibits. Rajhans Letter to Commerce on Second Supplemental Questionnaire Section D Response at Ex. D-9(a), D-9(b), D-10(a), D-14, D-18, P.R. 244 (Dec. 13, 2023) ("Rajhans Second SQR Section D").

Court No. 24-00119                                                      Page 6

In January 2024, Commerce conducted on-site verification of Rajhans' sale and cost information and on February 12, 2024, Commerce issued its Cost Verification Report.  See Commerce Memorandum on Rajhans Cost Verification, P.R. 265 (Feb. 12, 2024) ("Cost Verification Report" or "CVR").  Commerce observed that Rajhans had "removed" the WIP inventory item originally featured in its cost reconciliation because the company "agreed that it was double counted."  CVR at 11. "Therefore," Commerce reasoned, "the WIP inventory adjustment made in the preliminary determination is no longer necessary."  Id.  On scrap offset, Commerce wrote:

> Based on our review, the reported raw material costs capture the yield losses and the standard yield rates used for the reported cost were consistent with the actual production yields experienced by [Rajhans]. For the final determination, it may be appropriate to reverse the scrap adjustment Commerce made in the preliminary determination related to yield losses.

Id. at 16.

Both Rajhans and ABR submitted administrative briefs to Commerce in advance of Commerce's Final Determination.  ABR Admin. Case Br., P.R. 274 (Mar. 12, 2024) ("ABR Admin. Br."); Rajhans Admin. Case Br., P.R. 272 (Mar. 11, 2024) ("Rajhans Admin. Br."); ABR Admin. Rebuttal Br., P.R. 284 (Mar. 26, 2024), revised in ABR Admin. Rebuttal Br., P.R. 289 (Mar. 29, 2024); Rajhans Admin. Rebuttal Br., P.R. 283 (Mar. 25, 2024).  After hearing from interested parties, Commerce reevaluated Rajhans' cost reporting, requested WIP adjustment, and scrap offset.

Court No. 24-00119                                                          Page 7

On April 22, 2024, after Rajhans corrected its double counting issue, Commerce reversed the WIP adjustment made in the Preliminary Determination. IDM at 10.

On scrap offset, Commerce noted Rajhans "does not value the scrap in its normal books and records." Id. at 6. As such, Commerce explained that Rajhans based its scrap offset on "standard yield rates maintained in the normal course of business and the consumption value of the chemical code-specific billet at the rod production stage. Id. Commerce found "the methodology used to determine the scrap offset quantity" to be reasonable, id. at 7, but found it unreasonable "for Rajhans to value the generated scrap based on the chemical code-specific billet cost." Id. Commerce "revised the value of Rajhans' scrap offset at the rod production stage based on the ratio of the period of investigation ("POI") weighted average per-unit value of reintroduced scrap at the billet production stage and the POI weighted average per-unit value of the scrap offset at the rod production stage." Id.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to section 516A of the Tariff Act of 1930 ("the Act"), as amended, which authorizes judicial review of final determinations by the Commission in antidumping and countervailing duty investigations. See 19 U.S.C. § 1516a(a)(2)(B)(i). The court reviews such determinations under 28 U.S.C. § 1581(c).

Court No. 24-00119                                                    Page 8

The court sustains Commerce's determinations, findings, and conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight" and requires the court to consider the record as a whole. Universal Camera Corp. at 488.

## DISCUSSION

### I.    Commerce did not reasonably address WIP inventory adjustment concerns

ABR argues that Commerce's decision to grant Rajhans a WIP inventory adjustment to its COM is unreasonable and unsupported by substantial evidence. ABR Br. at 14–15. The Government maintains that Commerce's WIP inventory adjustment was lawful, reasonable, and supported by record evidence. See Def. Resp. in Opp. Pl. Mot. for J. on Agency R., ECF Nos. 33–34, at 8 (Apr. 21, 2025) ("Gov. Br.").

Commerce's WIP inventory adjustment is not supported by substantial evidence because Commerce did not reasonably address ABR's concerns regarding

Court No. 24-00119                                                                Page 9

(i) Commerce endorsing Rajhans' two-step cost reporting methodology; and (ii)

Commerce allowing Rajhans to include finished or saleable goods in the WIP

inventory.

### (a) Commerce must reevaluate Rajhans' two-step cost reporting methodology

ABR argues that Rajhans' two-step cost reporting methodology already

accounts for a change in inventory quantity of semi-finished goods, making Rajhans'

proposed WIP adjustment redundant.  ABR Br. at 15.  As a result, ABR contends,

> Commerce artificially lowered the actual per-unit cost incurred to
> produce brass rod. The actual materials and processing needed to
> produce each billet does not change simply because the inventory of
> billets changed from the beginning of the year to the end.  Regardless of
> whether a completed billet is sold, consumed in brass rod production, or
> remains in inventory, its per-unit cost to produce remains the same.

Id. at 18.

The Government argues that a WIP adjustment is a "standard" factor in the

calculation of COM.  Gov. Br. at 8–9.  The Government highlights that Commerce

explained "the change in WIP inventory is necessary to ensure the per-unit billet

costs used in the rod cost calculation are accurate."  Id. at 10 (citing IDM at 10).  By

including the change in WIP inventory in the total billet costs, the Government

contends Commerce's calculated per-unit billet costs reflected only the costs

associated with billets that were consumed in rod production by the end of the POI.

Id. (citing IDM at 10).  The Government elaborates that in its Final Determination,

Commerce noted that without the stated change in WIP inventory, the per-unit

billet costs would have included both costs to produce billet used in rod production and costs to produce billets that were not consumed in rod production by the end of the POI. Id. (citing IDM at 10).

Before Commerce, Rajhans explained that it acknowledged the double-counting in the WIP inventory adjustment identified during the preliminary investigation and corrected it. Rajhans Admin. Case Br. at 2. While ABR recognized that "Commerce no longer needs to correct for the 'double counting' of the WIP adjustment from the preliminary determination," ABR Admin. Br. at 2, ABR maintained that a WIP inventory adjustment was still unnecessary and distortive because Rajhans' process costing methodology already captured total manufacturing costs. Id.

ABR explained that Rajhans' "process costing methodology" entailed a two-step system under which the weighted average per-unit cost of a billet produced by Rajhans was directly incorporated into the rod extrusion stage of manufacturing. See id. at 17 (responding to CVR at 5, 11, 14). ABR referred to this two-step process as indicating a "direct linkage" between what it costs Rajhans to manufacture a billet and what it costs Rajhans to use a billet to manufacture an extruded brass rod. See id. ABR noted Rajhans' methodology was "based on a standard recipe for raw material consumption" and thus "[did] not account for amounts of WIP inventories in excess of the amounts projected to be consumed per the standard recipe." Id. at 17 n.68. ABR stressed to Commerce that Rajhans' methodology

Court No. 24-00119                                                      Page 11

already captured the POI cost of goods manufactured in the final product,

"obviating the need to account for any beginning and ending WIP." Id. at 18.

Commerce failed to reasonably address ABR's legal and factual concerns

about a possible redundancy in the WIP inventory adjustment given Rajhans' two-

step costing methodology.  In the Final Determination, Commerce endorsed

Rajhans' two-step process costing methodology and rejected ABR's argument that

the WIP adjustment allowed for redundant process costing because:

> The COM is *normally* calculated by adding the beginning WIP inventory
> and the total manufacturing costs incurred for the current accounting
> period and deducting the value of the ending WIP inventory. Thus, the
> change in the WIP inventory is *normally* included as a part of the COM
> and *this is the precise reason* that Commerce includes the change in
> WIP inventory in the reported COM.

IDM at 10 (citations omitted) (emphasis added).  Commerce's reasoning relies

unduly on a generic description of how COM is normally determined. See id.

Commerce's explanation establishes that WIP inventory is "normally" an

appropriate consideration in determining cost of manufacturing, but Commerce fails

to justify its specific WIP inventory adjustment here given the two-stage process

costing methodology.  See id.

Commerce then stated that for step one of Rajhans' two-step methodology,

Rajhans derived its per-unit billet cost from the "weighted average per-unit cost of

the total billets produced during the POI, not all of which were consumed in the rod

production." Id.  Commerce elaborated that such methodology ensures "all the

manufacturing costs incurred in producing finished goods during the POI are included in the total COM." Id. at 10–11. While Commerce found this approach significant because it suggested that not all WIP would be captured by the per-unit direct costs alone, Commerce disregarded ABR's concern that such an adjustment would lead to redundancies. See id. Commerce also put forth that it "[did] not find Rajhans' reduction in costs for change in WIP to be problematic, as it is an integral part of the equation in computing total POI cost of goods manufactured," id. at 11, but did so again without addressing the distortive redundancies ABR alleged.

Accordingly, Commerce did not reasonably address ABR's concern that Rajhans' methodology rendered a WIP adjustment unnecessary and unreasonable in its Final Determination, warranting remand. See id.

### (b) Commerce must reevaluate Rajhans' WIP adjustment

ABR asserts Commerce's WIP adjustment is predicated on a "misleading characterization" of the semi-finished goods subject to Rajhans' claimed WIP adjustment. ABR Br. at 22. ABR notes that Commerce has a judicially affirmed "established practice" of allowing respondents to make inventory adjustments in their reported COM when the adjustments "result from revaluations of either raw materials or WIP and are not related to finished goods inventory." Id. at 14 (quoting Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from Mexico: Final Results of Antidumping Duty Administrative Review; 2018–2019, 86 Fed. Reg. 41,448 (Aug. 2, 2021), and accompanying Issues and Decision

Court No. 24-00119                                                    Page 13

Memorandum at Comment 8 ("SPT from Mexico").  However, "raw materials and

work in process are, by definition, not yet salable merchandise."  Id. (quoting

Torrington Co. v. United States, 926 F. Supp. 1151, 1159–60 (CIT 1996)).  According

to ABR, "[r]ecord evidence demonstrates that Rajhans' 'semi-finished goods' are in

fact saleable merchandise," and thus Commerce's "decision in this regard was

unsupported by substantial evidence and not in accordance with law."  Id. at 22.

ABR contends that in the Final Determination, Commerce unreasonably dismissed

such concerns as "unpersuasive" without acknowledging the record evidence.  Id. at

21 (citing IDM at 11).

The Government asserts that ABR improperly relies on Commerce's past

practice to argue that Rajhans' proposed WIP adjustment is unreasonable, because

the change in WIP inventory here only involves the amount of WIP inventory,

unlike the valuation judgments in the past practice ABR references.  Gov. Br. at

12–13 (citing ABR Admin. Br. at 19–22 (citations omitted)).  As such, the

Government asserts ABR's saleable merchandise argument lacks adequate support

to undermine Commerce's determination.  Id. at 16–17.

In response to Commerce's alleged failure to respond to ABR's concern that

Rajhans improperly included saleable merchandise in its WIP inventory, the

Government contends Commerce need not "specifically address" arguments that are

"not significant."  Id. at 16 (citations omitted); see also id. at 18 (quoting Altx, Inc. v.

United States, 167 F. Supp. 2d 1353, 1374 (CIT 2001)).  Nevertheless, the

Government insists Commerce addressed ABR's concerns and sufficiently engaged with the record evidence when accepting Rajhans' WIP inventory adjustment.  Id. (citing IDM at 11).  According to the Government, ABR's arguments merely express "disagreement with Commerce's weighing of the evidence," and lack adequate support to undermine Commerce's determination.  Id. at 15 (quoting Haixing Jingmei Chem. Prods. Sales Co., Ltd. v. United States, 335 F. Supp. 3d 1330, 1346 (CIT 2018); see id. at 16–17.

ABR characterizes how the Government treats Commerce's purported oversight of ABR's saleable goods arguments as a "post hoc rationalization," which is "no substitute for a reasoned analysis from Commerce in the Final Determination."  ABR Reply at 9 (citing Timken Co. v. United States, 894 F.2d 385, 389 (Fed. Cir. 1990)).

Rajhans adds that Commerce's WIP adjustment did not include saleable or finished goods.  See Def.-Int.'s Resp. in Opp'n to Pl. ABR's for J. on the Agency R., ECF Nos. 35–36, at 5–8 (May 5, 2025) ("DI Br.").  Rajhans justifies its treatment of billets as "semi-finished goods" explaining that it uses billets in the "extrusion stage for the production of brass bars and rods."  DI Br. at 7 (citing SQR Section D at 22).  Further, only a limited number of billets were sold in the ordinary course of business, and Rajhans insists those billets were excluded from its WIP inventory.  Id. at 8.  Therefore, the billets accounted for as WIP inventory were "in process

Court No. 24-00119                                                              Page 15

merchandise" correctly reported as semi-finished goods during the investigation and

properly treated as WIP rather than finished goods.  Id.

> Before Commerce, ABR expressed the same concern that:

> [E]ven if a WIP adjustment were appropriate in this case (and it is not), Commerce's practice is to allow a respondent to adjust its reported COM where such adjustments result from revaluations of either raw materials or WIP and are not related to finished goods inventory. Importantly, raw materials and WIP are, by definition, not yet saleable merchandise, yet the items that are the subject of Rajhans' claimed WIP adjustment are, by contrast, saleable merchandise.  As such, these items are not susceptible to a WIP adjustment in this case.

ABR Admin. Br. at 18 (emphasis in original).

ABR highlighted to Commerce that Rajhans' quantity-based inventory

movement production report, that identified semi-finished goods included in WIP,

actually included finished goods within the context of the antidumping analysis.  Id.

at 18–19 ("For example, Rajhans reports billets sold at the billet stage,

demonstrating that billet is a finished good.  Indeed, the product scope considers

Rajhans' billets to be in-scope merchandise.").  ABR supported its argument at the

administrative stage with the same past practice ABR refers to here; namely,

Commerce's practice of disallowing WIP adjustments for finished goods or saleable

merchandise.  Id. at 18 (citing SPT from Mexico; Torrington Co., 926 F. Supp. at

1159–1160).

> Moreover, ABR summarized to Commerce:

> Rajhans' contention that it should be allotted a semi-finished goods WIP adjustment hinges on misleading descriptions of the semi-finished goods

and distortive cost allocation methods.  According to Rajhans, this WIP consists of partially finished goods that are still undergoing production. But the record evidence demonstrates that Rajhans' "semi-finished goods" are in fact in-scope brass billets and by-products, not partially finished bar and rod. Accordingly, Commerce must remove Rajhans' WIP adjustment for the final determination in order to avoid distortions to the margin.

Id. at 20.

Commerce unreasonably overlooked ABR's concerns regarding Rajhans' request for a WIP inventory adjustment on saleable goods. See id. at 18.  In response to ABR's saleable goods comments, Commerce found ABR's "argument to be unpersuasive," because "[t]he record shows that Rajhans' WIP inventory includes billets and products in process and these items were recorded in the audited financial statement as WIP inventory."  IDM at 11.  Commerce added only that "the record also shows that billets produced during the POI were *mostly* consumed in the production of rod products."  Id. (emphasis added).  Here, Commerce did observe that not all billets were used to produce rods, which suggested that a billet *might* qualify as either WIP for something other than a rod or as a finished good that could be sold in its own right.  Id. at 11 (citing CVR at CVE 2, CVE 4, and CVE 6).

Commerce briefly addressed ABR's reference to Commerce's past practice when it explained that ABR's invocation of Torrington Co. was "misplaced because that case discusses the treatment of WIP inventory in the context of calculating inventory carrying cost, not COM," id. (citing Torrington Co., 926 F. Supp, at 1159–60), but does not provide any further analysis or context demonstrating that ABR's

arguments should be dismissed.  Commerce's cursory explanation for disregarding any billets that were finished, but subject to the WIP adjustment, is unreasonable. On remand, Commerce must reconsider the eligibility of the items subject to the WIP adjustment and respond to ABR's arguments about saleable merchandise.

## II.    Commerce did not reasonably address ABR's scrap offset concerns

ABR argues that while Commerce attempted to remedy the flaws ABR identified in Rajhans' scrap valuation methodology at the administrative stage, it failed to do so reasonably.  ABR Br. at 8.  Specifically, ABR argues that "[i]n the Final Determination, Commerce applied an adjustment to Rajhans' reported scrap offset to address Rajhans' overvaluation of scrap as a byproduct offset, but Commerce's adjustment did not address the separate problem of the differentiated scrap values based on chemical code."  Id. (citing IDM at 7).

ABR notes that Commerce "sought to correct" the "lack of parallelism between scrap value as an input and scrap value as a byproduct offset," "but there remains a second major flaw that Commerce's adjustment method did not remedy and that Commerce's Final Determination did not even address."  Id. at 27. Specifically, Commerce "failed to address the scrap value variation" resulting from a mismatch between chemical code-specific variations in the per-unit scrap value at the rod stage, id. at 28, and commingled scrap, ABR Admin. Br. at 15.  ABR "provided distinct solutions that Commerce could use to address" the flaws identified at the administrative stage, ABR Br. at 11, including ABR's second

proposed solution: to apply "a single average per-unit scrap value." Id. at 30. ABR

argues this "is the most reasonable approach" because scrap value would not be

distorted by any differences in billet chemistry, thus addressing all flaws related to

scrap offset, not only the overvaluation flaw. Id.

The Government defends Commerce's adjustment to Rajhans' scrap offset

methodology as supported by substantial evidence. Gov. Br. at 20. The

Government notes that in Commerce's Final Determination, Commerce agreed with

ABR's administrative argument that Rajhans' methodology for valuing the scrap

offset was "'inconsistent' with 'Rajhans' scrap valuation methodology used for the

reintroduced scrap at the billet production stage." Id. at 21 (citing IDM at 7). But,

consistent with ABR's first proposed solution, Commerce adjusted Rajhans' scrap

offset using the ratio between the average per-unit value of the reintroduced scrap

and the average per-unit value of scrap in Rajhans' scrap offset. See id. As such,

the Government argues Commerce was not required to address ABR's "secondary

alternative" solution: the single average per-unit scrap value approach. Id. at 22

(citing IDM at 7; ABR Admin. Br. at 15).

The Government maintains that "even assuming that Commerce was

required to address plaintiffs' secondary argument—which, because it accepted

plaintiffs' first alternative, it was not," ABR "cannot demonstrate that Commerce's

adjustment was unreasonable or unlawful, and fail[s] to substantiate [its] claim

that Rajhans' scrap offset is still distortive despite Commerce's adjustment." Id. at

21–22 (citing <u>Ceramica Regiomontana, S.A. v. United States</u>, 10 CIT 399, 404–05 (1986) ("[T]he only question is whether 'the agency's methodology and procedures are reasonable means of effectuating the statutory purpose'"), <u>aff'd</u>, 810 F.2d 1137 (Fed. Cir. 1987)).

Before Commerce, ABR disputed Rajhans' methodology for valuing the scrap offset and applying it on a CONNUM-specific bases. <u>ABR Admin. Br.</u> at 5. ABR argued that Rajhans' scrap offset valuation methodology led to improper valuation for bar and rod and was "flawed in two crucial respects." <u>Id.</u> at 10. First, ABR contended Rajhans erred in valuing self-generated scrap for the buildup of Rajhans' billet costs and then valued "the same self-generated scrap *according to the cost of the billet* when calculating the value of the scrap offset applied at the bar and rod stage." <u>Id.</u> at 11.

The second flaw ABR identified was that "Rajhans assigned the pristine billet cost amount to the self-generated scrap on a chemical code-specific basis, which only seems reasonable if there were a 'closed loop' — i.e., if the particular scrap grade generated from producing a specific finished product were re-introduced as an input into the identical billet with the same chemical code used for that product." <u>Id.</u> at 13. ABR explained, however, that Rajhans does not employ a "closed loop" system and there are inconsistencies between the chemical codes of the re-introduced scrap and the chemical codes of the billet, given the scrap is commingled. <u>See id.</u> at 13, 15.

Regarding both identified flaws, ABR proposed two distinct solutions to Commerce. The first solution would rectify flaw one, by "develop[ing] a ratio reflecting (1) the . . . value of the runaround scrap in Rajhans' billet cost buildup, divided by (2) the average value of Rajhans' claimed scrap offsets." Id. at 15. ABR explained that such a solution would "be adjusting for the excessive offsets claimed on a CONNUM-specific basis." Id. The second solution ABR proposed was for Commerce to "use a single average Rs/kg scrap offset for all CONNUMs, accounting only for differences in yield (but not differences in chemistry) due to the commingling of runaround scrap." Id.

In the Final Determination, Commerce explained that Rajhans tracks the quantities of generated and reintroduced scrap, but it does not value the scrap in its normal books and records. IDM at 6. Commerce then analyzed whether Rajhans reasonably determined both the quantity and the value of the generated and reintroduced scrap. Id. at 6–7.

Regarding quantity, Commerce explained in the Final Determination that after the Preliminary Determination, but prior to verification, Commerce requested clarification from Rajhans regarding the yield losses associated with rod products. Id. at 6–7. After Rajhans conceded that its previous statement to Commerce was incorrect and clarified its process, Commerce found Rajhans' methodology used to determine scrap offset quantity in the scrap offset calculation at the rod production stage to be reasonable. Id. at 7.

Court No. 24-00119                                                            Page 21

Regarding value, Commerce agreed with ABR that because "Rajhans does not value the generated or the reintroduced scrap in its normal books and records," it was "unreasonable for Rajhans to value the generated scrap based on the chemical code-specific billet cost." Id. To rectify what Commerce identified as "overstated scrap value," Commerce

> revised the value of Rajhans' scrap offset at the rod production stage based on the ratio of the POI weighted average per-unit value of reintroduced scrap at the billet production stage and the POI weighted average per-unit value of the scrap offset at the rod production stage.

Id. Commerce did not consider ABR's second proposed solution in the Final Determination.

Commerce did not sufficiently address ABR's concerns raised at the administrative stage and did not reasonably support the scrap valuation methodology applied. While Commerce agreed with ABR that it was "unreasonable for Rajhans to value the generated scrap [at the rod production stage] based on the chemical code-specific billet cost," id., and revised the methodology, Commerce did so without considering ABR's concern that commingled runaround scrap was improperly assigned a pristine billet cost on a chemical-code specific basis. See ABR Admin. Br. at 21–22.

In its Final Determination, Commerce revised Rajhans' scrap offset consistent with ABR's first alleged distortion and corresponding proposed solution. Commerce's explanation for its revision overlooks ABR's second concern that

Court No. 24-00119                                                    Page 22

because of the commingled scrap, re-introduced scrap would not necessarily be consistent with the billet chemical code. See IDM at 4, 7.

Commerce's explanation fails to acknowledge ABR's proposed solution of using a single average value calculation (i.e., to "use a single average Rs/kg scrap offset for all CONNUMs, accounting only for differences in yield (but not differences in chemistry) due to the commingling of runaround scrap"). Compare id. with ABR Admin. Br. at 15. In ABR's view, assigning a single average value to all runaround scrap remedied both flaws caused by Rajhans' scrap offset methodology. ABR Admin. Br. at 2. Commerce did not address ABR's contention that the proposed single average value method aligned with Rajhans' own reporting practice of using "a single average value for its self-generated scrap used in the buildup of its billet production cost." Id.

The Government's reliance on the fact that ABR identified the single average value calculation as an "alternative" solution rather than a distinct argument is unavailing. Gov. Br. at 20 (citing ABR Admin. Br. at 15). ABR's designation of the solution as an "alternative" does not absolve Commerce from its responsibility to acknowledge ABR's concern that commingled runaround scrap was distortedly assigned a pristine billet cost on a chemical-code specific basis. See ABR Admin. Br. at 22. ABR proposed two resolutions. Commerce adopted the first resolution, which solved one of the two issues ABR raised with Commerce's scrap offset valuation. Commerce did not address ABR's second concern.

As such, the court remands for Commerce to consider whether Rajhans'
methodology properly accounts for variations in the chemical composition of
commingled scrap.  Commerce must also provide a reasonable explanation
responding to ABR's assertion that a single average rate resolves the alleged
distortions in the scrap offset calculation.

## CONCLUSION AND ORDER

On both WIP inventory and scrap offset, Commerce failed to respond to
ABR's arguments presented at the administrative stage.  These arguments
reasonably identified record evidence suggesting that the cost calculation changes
endorsed in the Final Determination were insufficient.  Commerce's discussion
unreasonably minimized ABR's arguments without considering the record evidence
and applicable law.  If Commerce determines on remand that its calculations
related to WIP inventory or scrap offset require alteration, it should
correspondingly adjust the All Others Rate to conform with any updates to its
calculations and conclusions.  Therefore, upon consideration of all papers and
proceedings herein, it is hereby

**ORDERED** that Commerce, within 90 days from the date of issuance of this
Opinion and Order, shall submit a redetermination upon remand ("Remand
Redetermination") that complies with this Opinion and Order; it is further

Court No. 24-00119                                                                      Page 24

ORDERED that defendant shall supplement the administrative record with any information considered by Commerce in reaching the decision in the Remand Redetermination within 14 days of the Remand Determination; it is further

ORDERED that subsequent proceedings shall be governed by USCIT Rule 56.2(h); and it is further

ORDERED that the parties shall file the joint appendix within 14 days after the filing of replies to the comments on the Remand Redetermination.

                                        /s/      Joseph A. Laroski, Jr.
                                        Joseph A. Laroski, Jr., Judge

Dated: July 1, 2026
New York, New York