A-533-915
Remand – Slip Op.: 26-70
POI: 04/01/2022 – 03/31/2023
**Public Document**
E&C/OI: EH

***American Brass Rod Fair Trade Coalition and its Individual Members v. United States***
**Consol. Court No.: 24-00119; Slip Op.: 26-70 (CIT July 1, 2026)**
**Brass Rod from India**

# FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

## I. SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand opinion and order of the U.S. Court of International Trade (Court) in *American Brass Rod Fair Trade Coalition and its Individual Members v. United States*, Slip Op. 26-70 (CIT July 1, 2026) (*Remand Order*). These final results of redetermination concern the investigation of sales at less than fair value of brass rod from India covering the period of investigation April 1, 2022, through March 31, 2023.[1] The Court remanded Commerce's final affirmative determination to Commerce for reconsideration of its treatment of Rajhans Metals Private Limited's (Rajhans) work-in-process (WIP) adjustment and scrap offset valuation in the cost of manufacturing.[2] Commerce has reexamined both issues and disallowed Rajhans' work-in-process adjustment and adjusted the calculation for scrap offset to eliminate the scrap offset valuation difference between products arising from the code-specific chemical composition. Therefore, the estimated weighted-average dumping margin for Rajhans is now 4.81 percent and the estimated all-others rate is 4.85 percent.

[1] *See Brass Rod from India: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 FR 29300 (April 22, 2024) (*Final Determination*), and accompanying Issues and Decision Memorandum.
[2] *See Remand Order*.

## II. BACKGROUND

Commerce published its *Final Determination* on April 22, 2024.[3] The respondent in the underlying investigation is Rajhans; the petitioner in the underlying investigation is the American Brass Rod Fair Trade Coalition and its Individual Members (ABR). ABR challenged Commerce's *Final Determination* with respect to the work-in-process adjustment and scrap offset valuation issues.[4] The Court determined Commerce failed to respond to ABR's arguments presented at the administrative stage.[5] The Court remanded for Commerce to reconsider (1)(a) the eligibility of Rajhans' work-in-process adjustment and (1)(b) respond to ABR's arguments about Rajhans' work-in-process inventory included products that could be saleable merchandise, and (2)(a) reconsider whether Rajhans' scrap-offset methodology properly accounts for variations in the chemical composition in commingled scrap and (2)(b) provide a reasonable explanation responding to ABR's assertion that a single average rate resolves the alleged distortions in the scrap offset calculation.[6]

## III. REMANDED ISSUES

### A. <u>Work-In-Process Adjustment</u>

#### 1. <u>Background</u>

In the preliminary determination, Commerce disallowed Rajhans' adjustment to its reported cost of manufacturing for the change in work-in-process inventory on the basis that the change in work-in-process inventory was accounted for twice in the cost reconciliation.[7] After the preliminary determination, and prior to verification, Rajhans claimed that it had corrected the

[3] *See Final Determination*, 89 FR at 29300.
[4] *See Remand Order* at 2.
[5] *Id.* at 23.
[6] *Id.* at 17 and 23.
[7] *See* Memorandum, "Cost of Production and Constructed Value Calculation Adjustments for the Preliminary Determination – Rajhans Metals Private Limited," dated November 24, 2023 (Preliminary Cost Calculation Memorandum).

double counting in its reporting.[8] With this change, at the *Final Determination*, Commerce reversed its adjustment for the change in work-in-process inventory.[9]

Before the Court, ABR argued that Rajhans' cost calculation methodology double counted the change in work-in-process inventory. ABR asserted that Rajhans used the total period of investigation quantity of billets consumed to determine the total period of investigation billet costs consumed for brass rod produced during the period of investigation. Thus, Rajhans already accounted for the change in quantity of work-in-process inventory. However, according to ABR, Rajhans again included a separate adjustment "WIP Re-allocation" in the per-unit cost of manufacturing calculation, *i.e.,* change in work-in-process inventory, which resulted in an understatement of its costs. ABR also argues that the "WIP Re-allocation" adjustment is unwarranted because it also includes products that could be saleable finished goods.

The Court remanded Commerce to address two arguments made by ABR: (1) Rajhans' cost calculation methodology obviated the need for the work-in-process inventory adjustment, *i.e.*, "WIP Re-allocation" adjustment, which Rajhans included in the calculation of its cost of manufacturing, and (2) Rajhans' work-in-process inventory included products that could be saleable finished goods.

2. <u>Analysis</u>

Pursuant to the Court's Remand Order, for the final results of redetermination, Commerce reexamined Rajhans's work-in-process inventory adjustment, *i.e.,* "WIP Re-allocation" adjustment. Commerce determines that the "WIP Re-allocation" adjustment is unnecessary

---

[8] *See* Rajhans's Letter, "Second Supplemental Section D Response," dated December 13, 2023 (2SDQR), at 11 and Re-Revised Exhibit D-14; *see also* Memorandum, "Verification of the Cost Response of Rajhans Metals Private Limited in the Antidumping Duty Investigation of Brass Rod from India," dated February 12, 2024 (Cost Verification Report), at Cost Verification Exhibit (CVE) 4.
[9] *See* Memorandum, "Cost of Production and Constructed Value Calculation Adjustments for the Final Determination – Rajhans Metals Private Limited," dated April 15, 2024 (Final Cost Calculation Memorandum).

because Rajhans' per-unit cost calculation methodology already accounted for the changes in work-in-process inventory. Thus, Commerce is disallowing Rajhans' "WIP Re-allocation" adjustment for the final results of redetermination.

In the *Remand Order*, the Court directed Commerce to address whether: (1) Rajhans' cost calculation methodology obviated the need for the work-in-process inventory adjustment, *i.e.*, "WIP Re-allocation" adjustment, and (2) Rajhans' work-in-process inventory included products that could be saleable finished goods.

Work-in-process inventories reflect production for products that are incomplete at the end of a given period. Thus, when we consider the period of investigation, the beginning work-in-process inventory balance relates to production that is finished during the period of investigation and should be included in the reported costs, while the ending work-in-process inventory balance relates to production that is finished after the period of investigation and should be excluded from the reported costs. In this case, Rajhans produces brass rod from self-produced billets[10] and the work-in-process inventories at issue are the self-produced billets that may be further processed into brass rod in future periods. For reporting purposes, Rajhans calculated the reported billet costs based on the product-specific billet consumption quantity required to produce the reported finished goods multiplied by the chemical code-specific per-unit billet cost.[11] Rajhans then adjusted this billet cost for a "WIP Re-allocation" adjustment that reflects the addition of beginning work-in-process billet costs and the deduction of ending work-in-process billet costs.[12] The resulting billet costs were then used as input costs for producing brass rod products.[13]

---

[10] *See* Rajhans's Letter, "Sections B-D Response" dated August 24, 2023 (DQR), at D-3.
[11] *See* 2SDQR at Re-Revised Exhibit D-10(a).
[12] *Id.*
[13] *Id.*

After reexamining the record, Commerce determines that the "WIP Re-allocation" adjustment is unnecessary because under the cost calculation methodology used by Rajhans, the reported billet consumption costs reflect the total billet inputs required to produce the reported finished goods regardless of when those billets were produced, *i.e.*, Rajhans methodology already accounts for the impact of work-in-process inventories.[14] Specifically, by using the total quantity of billets consumed in the production of the reported brass rod quantities, Rajhans already includes the billets produced prior to the period of investigation that were consumed in brass rod production during the period of investigation and excludes billets produced during the period of investigation that were consumed in brass rod production after the period of investigation.[15] Thus, allowing Rajhans' "WIP Re-allocation" adjustment would result in a double counting of the change in work-in-process inventories. Therefore, Commerce is disallowing Rajhans' "WIP Re-allocation" adjustment for the final results of redetermination. Regarding whether the "WIP Re-allocation" adjustment should be excluded because Rajhans' work-in-process inventory includes products that could be saleable finished goods, this argument is no longer relevant as Commerce is disallowing the "WIP Re-allocation" adjustment for the reasons stated above.

**B. <u>Scrap-Offset Methodology</u>**

1. <u>Background</u>

In the *Final Determination*, Commerce adjusted Rajhans' reported offset for scrap generated during the brass rod production stage.[16] Commerce found that Rajhans valued the scrap generated at the brass rod production stage based on the chemical code-specific cost of the

[14] *See* 2SDQR at Re-Revised Exhibit D-10(a) and Cost Verification Report at CVE 6.
[15] *Id.*
[16] *See* Memorandum, "Cost of Production and Constructed Value Calculation Adjustments for the Final Determination – Rajhans Metals Private Limited" dated April 15, 2024 (Final Cost Calculation Memorandum).

billets consumed, *i.e.*, scrap offset values were based on chemical code-specific pristine billets.[17] However, calculating the scrap offset using the value of pristine billets improperly overstated Rajhans' scrap offset at the brass rod production stage because the generated scrap does not have the same market value as a pristine billet. Thus, in the *Final Determination*, Commerce revised Rajhans' reported scrap offset to correct Rajhans' over-valuation of the scrap offset at the brass rod production stage.[18] This revision corrected the overstatement of the total claimed scrap offset that resulted from Rajhans' use of pristine billet costs to value the scrap generated at the brass rod production stage.[19]

Before the Court, ABR asserted that it raised two distinct issues for Rajhans' scrap offset valuation methodology related to the self-generated scrap at the brass rod production stage, which was re-introduced into the billet production stage, *i.e.*, runaround scrap.[20] The first issue is the over-valuation of the total scrap offset at the brass rod production stage. Specifically, the scrap generated at the brass rod production stage, *i.e.*, scrap offset, was valued based on the pristine billet cost. However, the reintroduced runaround scrap at the billet production stage was valued based on the period of investigation weighted average cost of scrap. As a result, according to ABR, Rajhans' total period of investigation scrap offset at the brass rod production stage was over-valued.[21] The second issue is the chemical-code specific pristine billet values that Rajhans assigned to the generated scrap at the brass rod production stage, which resulted in further inconsistencies in the scrap valuations between the generated scrap at the brass rod production stage, *i.e.*, chemical-code specific valuation for the scrap offset, and the reintroduced

[17] *See* 2SDQR at Re-Revised Exhibit D-10(a) and Cost Verification Report at CVE 4.
[18] *See* Final Cost Calculation Memorandum.
[19] *Id.*
[20] *See Remand Order* 17-18.
[21] *Id.*

runaround scrap at the billet production stage, *i.e.*, period of investigation weighted average scrap cost. ABR argues that chemical composition does not play a role in the reintroduced runaround scrap because scrap is commingled during the billet production stage.[22] As such, according to ABR, while Commerce's scrap adjustment in the *Final Determination* addressed the first issue, Commerce did not address the second issue. Thus, ABR asserts that the chemical code-specific value assigned to the generated scrap, *i.e.*, scrap offset, at the brass rod production stage should not reflect the cost differences associated with the chemical code-specific composition of the billets.

The Court remanded Commerce to address ABR's second argument whether valuing the generated scrap based on the chemical code-specific basis distorts the Rajhans' scrap offset at the brass rod production stage.[23]

2. <u>Analysis</u>

Pursuant to the Court's *Remand Order*, Commerce reexamined Rajhans' scrap offset methodology in conjunction with the scrap offset adjustment made in the *Final Determination*. Based on our review of the information, Commerce finds an additional adjustment to Rajhans' reported scrap offset is warranted to eliminate the cost differences arising from the use of chemical code-specific scrap offset values.

Based on the Court's *Remand Order*, we reexamined the record to determine whether the chemical code-specific value assigned to the generated scrap distorts Rajhans' reported scrap offset at the brass rod production stage. Rajhans' brass rod production process involves two steps: (1) raw materials are cast into brass billets; and (2) brass billets are extruded into brass

---

[22] *Id.* at 18 ("ABR argues {that applying a single average per-unit scrap value} 'is the most reasonable approach' because scrap value would not be distorted by any differences in billet chemistry, thus addressing all flaws related to scrap offset, not only the overvaluation flaw.").
[23] *See Remand Order* at 23.

rod. Scrap is generated in the second step, *i.e.*, the extrusion process, and Rajhans reuses this scrap by reintroducing it into the billet production stage, where the reintroduced runaround scrap is melted with other raw materials and then cast into billets.[24]

In calculating the reported costs, Rajhans valued the reintroduced runaround scrap consumed at the billet production stage based on the period of investigation weighted average per-unit cost of scrap without considering the chemical code-specific composition of the scrap.[25] However, Rajhans valued the scrap generated at the brass rod production stage, *i.e.*, the scrap offset, based on the chemical code-specific cost of the pristine billets used to produce the finished brass rod.[26]

After reexamining Rajhans scrap valuation methodologies in conjunction with the scrap adjustment Commerce made in the *Final Determination*, Commerce agrees that an additional adjustment to Rajhans' reported scrap offset is warranted. In the *Final Determination*, Commerce ensured that Rajhans' period of investigation scrap offset in total was no longer overstated;[27] however, Commerce did not consider whether the scrap offset at the product-specific level was reasonable. Thus, even after Commerce's scrap adjustment at the *Final Determination*, the scrap offsets for some products were higher or lower than the period of investigation weighted average per-unit scrap cost which Rajhans used for the reintroduced runaround scrap value at the billet production stage.[28] Consequently, the scrap offset value used at the brass rod production stage, *i.e.*, based on the chemical code-specific composition, distorts the scrap offset at the product-specific level. Therefore, for the final results of redetermination,

---

[24] *See* DQR at D-4 and Exhibits D-1 and D-2.
[25] *See* Cost Verification Report at CVE 4.
[26] *See* 2SDQR at Re-Revised Exhibit D-10(a).
[27] *See* Final Cost Calculation Memorandum.
[28] *See* 2SDQR at Re-Revised Exhibit D-10(a) and Cost Verification Report at CVE 4.

Commerce is revising the scrap offset adjustment made in the *Final Determination* to: (1) limit the over-valuation of the total scrap offset at the bar production stage; and (2) eliminate the differences in the product-specific scrap offset values, caused by valuing the generated scrap on a chemical code-specific basis, by using a single average per-unit scrap value.

## IV. INTERESTED PARTIES' COMMENTS

On August 24, 2026, Commerce issued the Draft Results of Redetermination and provided interested parties with an opportunity to comment on Commerce's analysis and redetermination.[29] Commerce received comments from ABR and Rajhans.[30] These comments are summarized verbatim from the executive summaries in the relevant submissions and are addressed below. After considering both parties' submissions, we made no changes to our conclusions in the Draft Results of Redetermination for these final results of redetermination.

**Comment 1: Work in Progress Adjustment**

*ABR's Comments*:

The following is a verbatim summary of the comments submitted by ABR. For further details, *see* ABR's Comments at 2-6.

> Commerce's redetermination correctly recognizes that "allowing Rajhans' 'WIP Re-allocation' adjustment would result in a double counting of the change in work-in-process inventories." Accordingly, Commerce's decision to disallow the WIP adjustment in the Draft Remand is supported by substantial evidence and complies with the Remand Order.

Rajhans did not comment on this issue.

**Commerce's Position:** As we discussed above, allowing Rajhans' "WIP Re-allocation"

---

[29] *See* Draft Results of Redetermination Pursuant to Court Remand, *American Brass Rod v. United States*, Consol. Court No. 24-00119, Slip Op. 26-70 (CIT July 1, 2026), dated August 24, 2026 (Draft Results of Redetermination).
[30] *See* ABR's Letter, "Petitioner's Comments on the Draft Remand Redetermination," dated September 4, 2026 (ABR's Comments); and Rajhans Metal's Letter, "Comments on Draft Redetermination," dated September 3, 2026 (Rajhans's Comments).

adjustment would result in double counting of the change in work-in-process inventories. Therefore, we have continued to disallow Rajhans' reported "WIP Re-allocation" adjustment for these final results of redetermination.

**Comment 2: Scrap Offset Methodology**

*ABR's Comments*:

The following is a verbatim summary of the comments submitted by ABR. For further details, *see* ABR's Comments at 6-9.

> The Draft Remand correctly recognizes the second flaw to Rajhans' scrap offset methodology, which is that "the scrap offsets for some products were higher or lower than the period of investigation weighted average per-unit scrap cost which Rajhans used for the reintroduced runaround scrap value at the billet production stage." Commerce appropriately corrects for this distortion by using a single average per-unit scrap value. Therefore, Commerce's reexamination of Rajhans' scrap offset methodology is supported by substantial evidence and complies with the Remand Order.

*Rajhans' Comments*:

Rajhans did not provide the requested executive summary regarding Commerce's Draft Results of Redetermination. Rajhans' comments may be found at pages 2 to 4 of Rajhans' Comments.

**Commerce's Position:** For the final results of redetermination, we have continued to recalculate Rajhans' scrap offset to eliminate the cost differences associated with chemical composition by using a single average per-unit scrap value.

Rajhans argues that scrap, *i.e.,* swarf, "either purchased or generated, has been valued at the respective purchase costs and that "{o}nly when a particular type of {scrap} was generated during the period of investigation, but {the} equivalent type was not purchased, such {scrap} was valued based on the weighted average per-unit cost of {scrap} without considering the

chemical code-specific composition."[31] Rajhans also argues that the variation in chemical codes of each billet causes a variation in the cost of each type of billet produced and in the value of the scrap generated.[32] Rajhans asserts that because of the variation in the types of scrap generated, "it is necessary to account for the cost differences associated with the chemical code-specific scrap generated."[33]

During the period of investigation, Rajhans obtained the scrap consumed in the billet production stage from four different sources: (1) purchased scrap; (2) scrap received and consumed for job work production, *i.e.,* scrap received for tolling production that were consumed but not purchased; (3) generated scrap from brass rod production stage, *i.e.,* reintroduced runaround scrap; and (4) recovered scrap from slag during billet production stage.[34] Thus, the sum of the quantities from these four sources represented Rajhans' total scrap consumption quantity at the billet production stage during the period of investigation.[35]

Contrary to Rajhans' argument, the record shows that the scrap received for job work production and the generated scrap from the brass rod and billet production stages were all valued based on the period of investigation weighted average per-unit cost of scrap without considering the chemical code-specific composition of the scrap.[36] Specifically, Rajhans' cost reconciliation demonstrates that the "costs of self-generated scrap" which represented the value of consumed scrap from job work production and the generated scrap from the brass rod and billet production stages was calculated based on the total consumption quantity of this scrap

[31] Rajhans's Comments at 3.
[32] *Id.* at 4
[33] *Id.*
[34] *See* Rajhans's Letter, "First Supplemental Section D Response," dated October 11, 2023 (1SDQR) at Exhibit S1D-10(c) Part 1 and Cost Verification Report at CVE 6.
[35] *Id.*
[36] *See* 1SDQR at Exhibit S1D-10(c) Part 1 and 2SDQR at Exhibit Re-Revised Exhibit D-14 Part 1. *See* also Cost Verification Report at CVE 4 and CVE 6.

multiplied by the period of investigation weighted average per-unit cost of scrap without considering the chemical code-specific composition.[37] Hence, the record shows that Rajhans valued the reintroduced runaround scrap consumed at the billet production stage, *i.e.,* generated scrap from brass rod production stage, based on the period of investigation weighted average per-unit cost of scrap without considering the chemical code-specific composition of the scrap. Consequently, the reported scrap offset would be distorted if the scrap generated at the brass rod production stage is valued based on a chemical code-specific basis.

Lastly, to support its argument, Rajhans referenced an exhibit on the record that shows the scrap consumption by chemical code.[38] However, this exhibit does not identify the scrap consumption by nature of its source, *i.e.,* purchased scrap, scrap from job work production, and generated scrap from the brass rod and billet production stages.[39] Further, as discussed above, Rajhans' cost reconciliation demonstrates that the "costs of self-generated scrap" which represented the value of consumed scrap from job work production and the generated scrap from the brass rod and billet production stages was calculated based on the total consumption quantity of this scrap multiplied by the period of investigation weighted average per-unit cost of scrap without considering the chemical code-specific composition.[40] Thus, the record does not support Rajhans' arguments that the generated scrap from the brass rod production stage was consumed at the billet production stage based on the scrap purchase price. Therefore, for these final results of redetermination, we have continued to eliminate the differences in the product-specific scrap offset values, caused by valuing the generated scrap on a chemical code-specific basis, by using a single average per-unit scrap value.

---

[37] *See* 2SDQR at Exhibit Re-Revised Exhibit D-14 Part 1 and Cost Verification Report at CVE 4.
[38] *See* Rajhans' Comments at 3 and 2SDQR at Exhibit Re-Revised Exhibit D-9(b) part 2.
[39] *Id.*
[40] *See* 2SDQR at Exhibit Re-Revised Exhibit D-14 Part 1 and Cost Verification Report at CVE 4.

**Comment 3: All-Others Rate**

*ABR's Comments*:

The following is a verbatim summary of the comments submitted by ABR. For further details, *see* ABR's Comments at 6.

> Because Commerce recalculated the estimated antidumping duty rate for Rajhans in the Draft Remand, Commerce appropriately recalculated the All Others rate as well.

Rajhans did not comment on this issue.

**Commerce's Position:** As the final remand margin and adjusted cash deposit rate for Rajhans remain unchanged from the Draft Results of Redetermination, the all-others rate and its adjusted cash deposit rate remain unchanged for the final results of redetermination.

## V. FINAL RESULTS OF REDETERMINATION

Based on the analysis and modifications describe above, Rajhans' recalculated estimated weight-averaged dumping margin for the period of investigation is as follows:

| Company | Final Determination Margin (Percent) | Final Determination Cash Deposit Rate Adjusted for Export Subsidies (Percent) | Final Remand Margin (Percent) | Final Remand Cash Deposit Rate Adjusted for Export Subsidies (Percent)[41] |
|---|---|---|---|---|
| Rajhans | 2.19 | 0.00 | 4.81 | 2.61 |
| All Others[42] | 2.41 | 0.00 | 4.85 | 2.65 |

Because the weighted-average dumping margins for Rajhans and all-other companies are different from those in the *Final Determination*, we intend to issue a *Timken*[43] notice with the

[41] *See Final Determination,* 89 FR at 29302 n.6, citing *Brass Rod from India: Final Affirmative Countervailing Duty Determination*, 88 FR 87407 (December 18, 2023), and accompanying Issues and Decision Memorandum at 3-4 for export subsidies we found to be specific under sections 771(5A)(A) and (B) of the Act.
[42] Based on the publicly-ranged U.S. sales value of subject merchandise for each company. *See* Memorandum, "Final All Others Rate," dated April 15, 2024.
[43] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).

amended final results should the court sustain these final results of redetermination. In addition, Commerce intends to issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the discussion above.

9/28/2026

X _______________________________

Signed by: SCOT FULLERTON

Scot Fullerton
Acting Deputy Assistant Secretary
for Antidumping and Countervailing Duty Operations